# APRIL TERM, 1870, at DETROIT.

### Henry H. Coolidge, v. Bezaleel P. Wells.

*Homestead.* Neither the Constitution, nor the statute, exempts a contemplated future homestead; and therefore, land on which no dwelling house had ever been erected, or commenced, and on which neither the complainant nor his family had ever resided, is not exempt as a homestead. *Beecher v. Baldy*, 7 *Mich.*, 501, cited and approved.

*Heard January 4. Decided April 5.*

Appeal in Chancery from Van Buren Circuit.

The complainant filed his bill to foreclose a mortgage, and alleged that on the sixteenth day of January, 1861, the defendant became indebted to the complainant in the sum of two thousand two hundred and sixty-five dollars and fifty-two cents, payable in three installments yearly thereafter, with annual interest at the rate of ten per cent; and that to secure the payment of the same, the defendant assigned to complainant a certificate from the Commissioner of the Land office of this State, for the south part of the southeast fractional quarter of section twenty-two, town seven south, of range seventeen west, containing forty acres. The bill also sets forth that there was due at the time of filing, the sum of $1,980,55, and that the amount due and to become due was $2,870,58, and contained the usual prayer for sale of the premises.

Defence: The answer admits the original indebtedness, and claims that, at the same time, the complainant had a chattel mortgage upon fruit trees growing upon the same land and another 40 acres adjoining for the security of the same debt; that complainant, contrary to agreement, and in

the absence of the defendant, took possession of the land and then neglected the trees and farm, and finally sold the trees at a great sacrifice. The defendant claims an equitable set-off to the amount of the value of the trees, and various other items for things sold, and also damages which he sustained by reason of the complainant's negligence and violation of the contract. The answer also claims that the land intended to be mortgaged was the only land owned by the defendant; that he was a married man, a householder, having a family at the time of the making of the mortgage, and ever since that the land in question was his homestead; that his wife did not sign the conveyance or mortgage, and that the same is void by the statute of this State.

A general replication was filed and proofs taken.

The proofs, as to the fact of a homestead, do not show that there was any dwelling house on the mortgaged premises, or that the mortgagor or his family had ever resided upon it. There is proof of his purpose to build a dwelling house upon it for himself and family. The record shows a considerable quantity of testimony as to the damage to the premises while they were in the possession of the mortgagee, and of the value of the fruit trees and other products taken off during such possession.

The Court below, April 30th, 1867, dismissed the bill without costs; "and without prejudice in any action at law hereafter to be instituted by said complainant against said defendant."

The complainant appeals to this Court.


*F. Muzzy*, for complainant.


The Court had jurisdiction of the cause and of the parties and it became its duty to settle the account between them and put an end to further litigation. If a balance was found due to defendant he was entitled to a decree for this amount.—*Story's Eq. Jur.* § *522.*

COOLIDGE v. WELLS.

If the complainant took possession and became the tenant of defendant and committed waste, or received the profits, the account between them should have been settled by the court.—*Same*, §§ *465, 466 and notes.* Testimony has been taken as to all transactions between the parties which had been going on three or four years, and a Court of equity is the appropriate tribunal to adjust the difference.—*Story's Eq. Jur.* § *450.*

But we think the Court was influenced in its decision by an erroneous view as to the rights of the defendant arising from our homestead laws.

The answer does not show that the land was occupied by the defendant, nor whether it is in a city or village, nor does it set forth the value. The proof is that the land was not occupied by the defendant or his family, and that it was worth more than fifteen hundred dollars; therefore the averments in the answer were insufficient for the admission of evidence and the evidence admitted insufficient to sustain the homestead claim.—*Helfenstein v. Cave, 3 Clarke, Iowa, 287. Same 6 Clarke, Iowa, 374.*

As it appears that the premises exceeded fifteen hundred dollars in value, the mortgage was valid, even if they were occupied as a homestead.—*Dye v. Mann, 10 Mich., 291.*

It does not appear by the answer or proofs, that the defendant ever selected the premises with reference to the exemption laws, by portioning off a quantity that would bring the homestead within the value of fifteen hundred dollars, or that he ever designated any particular part of the premises as a homestead. In such case his remedy and the remedy of complainant are provided by *Session laws of 1861, p. 540.* This act furnishes a reciprocal remedy. Each party by its provisions could secure his exact rights. It is the remedy furnished by the statute. A Court of chancery cannot deprive the complainant of its benefit.—*Thurston v. Prentiss, 1 Mich., 193.*

*D. Darwin Hughes,* on the same side.

The property in question was not a homestead, because,—

I. It did not contain a dwelling house or appurtenances, and could not be a homestead under any definition. The Constitution provides that every "homestead," bearing certain description as to amount and value and occupancy will be exempt. The word homestead must be understood in its ordinary meaning, and there can be no homestead without a dwelling house thereon. Homestead is the place of the mansion house, the enclosure or ground immediately connected with the mansion.— *Webster's Dictionary; Bouvier's Law. Dict.*

That the word when used in the Constitution must be understood according to its ordinary sense, or its technical sense, if it has one in law—See *People v. May., 3 Mich., 304.*—So that there can be no homestead in law until there is a homestead in fact.—*Beecher v. Baldy 7 Mich., 501.*

II. The land in question is not a homestead, because it was not occupied by defendant within the meaning of the Constitution. It must be occupied by the defendant *as* a homestead.—*Beecher v. Baldy, 7 Mich., 501.*—In this case the defendant was in possession and used the land as a nursery, but he did not occupy it as a homestead, or within the meaning of the Constitution.

III. But suppose it was a homestead so far as occupation and mansion house is concerned, the proof shows fully that it was worth more than $1500, and the complainant was entitled to a decree of foreclosure, and the defendant must set off his homestead under the statute.—*Laws 1861, p. 540.*

IV. If the facts showed that the homestead was not worth over $1500, the bill ought not to have been dismissed, but should have been retained and accounts taken, and on payment of amount due complainant, the certificate from the Land Office given up and re-assigned.

COOLIDGE v. WELLS.

The court having acquired jurisdiction for one purpose, should keep it to settle the whole controversy.

*Balch, Smiley & Balch*, for defendant.

The statute of 1848 and the Constitution of 1850 provide that a homestead consisting of not exceeding forty acres of land, and the dwelling house thereon, and the appurtenances, to be selected by the owner thereof, or in lieu thereof certain village property, &c., and owned and occupied by any resident of this State, not exceeding in value fifteen hundred dollars, shall be exempt from execution or other final process from a court. The statute also provides that such exemption shall not extend to any mortgage thereon lawfully obtained, but such mortgage or other alienation of such land by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same, unless said mortgage was given to secure the purchase money or some portion thereof.—*Laws of 1848, p. 124; Compiled Laws, § 4495-6; Constitution, Art. 16 § 2.*

*a.* The defendant was and is a married man and a householder, and his wife did not sign the conveyance or mortgage. He did not and does not own any land except the forty acres in question. The land does not exceed the constitutional quantity, and there is no evidence to show that it exceeds the constitutional value. There is no doubt that the defendant owned and occupied the premises. This being the case, the mortgage was void.— *Comp. L. pp. 72, 1217; Beecher v. Baldy, 7 Mich., 488; Dye v. Mann, 10 Mich., 296.*

*b.* The question may arise in this case: What kind or manner of occupancy is necessary to entitle the defendant and his family to the benefit of the homestead law? Does the Constitution mean that they must actually live in a house upon the land? Exemption statutes are remedial,

and usually very liberally construed.—*Montague v. Richardson, 24 Conn., 388; Robinson v. Wiley, 15 N. Y., 489; Peverly v. Sayles, 10 N. H., 358; Freeman v. Carpenter, 10 Vermont, 433; Patten v. Smith. 4 Conn., 450; 10 Met., 507; Deere v. Chapman, 25 Ill., 610; McCabe v. Muzzuchlli, 13 Wis., 478; Pelan v. De Bevard, 13 Iowa, 53; Wilcox v. Hawley, 31 N. Y., 648.*

c. The object of the statute is to place beyond the process of the courts a home for the family. It requires in case of village property, that it shall be *owned* and *occupied* by the person claiming or selecting it as such. The question then arises, what is an ownership and occupancy such as is required by the Constitution and laws? The construction given to the clause requiring an *ownership* has been a very liberal one. A homestead may be claimed in land of which a party is in possession under a contract to purchase. *McKee v. Wilcox, 13 Mich., 358.* Or having a lease or life estate in land. *Deere v. Chapman, 25 Ill., 610.*

So in the case of exemption of personal property. It has been held that a part owner was an "owner" within the meaning and intention of the law. *Radcliff v. Wood, 25 Barb., 52.*

d. The word "occupied" must receive a like liberal construction. Occupancy means possession.—*Jacob's Law Dic.; Bouvier's Law Dic.; Webster's Dic.,* title "Occupancy."

e. Must the land actually have a house upon it? This is another question arising in the case. The Constitution itself would seem to settle this question in the negative upon any fair construction. 1st. It exempts a homestead, not exceeding forty acres of land. 2d. The dwelling house thereon. 3d. Its appurtenances. Or in lieu thereof: 1st. A village lot. 2d. The dwelling house thereon. 3d. Its appurtenances, owned and occupied, &c.—*Comp. L. pp. 72, 1217.*

f. The phrase "owned and occupied by any resident of

this State," does not apply to cases where the exemption is claimed in property other than a city or village lot. It was the object and intention of the framers of the Constitution simply to limit the amount to fifteen hundred dollars.— *Comp. L. pp. 1217–72.*

*g.* The power given to the owner to make a selection implies that it may be any piece or parcel of land owned by the party claiming the exemption, for otherwise he could only have the piece on which he might be living, and no selection could be made. Section 4500 gives a party also the right to claim exemption of a house on land not his own.

*·h.* Any other construction would defeat the law and its object. It would be saying that the debtor who is able to own a piece of land with a house and other improvements upon it, can have the benefit of this law, but the poor man and his family for whose benefit this law was enacted, who are unable to own more than the bare land, shall lose what little they have.

This forty acres of land was and is claimed and intended as a homestead. It was owned by him and occupied as a homestead, as far as it was susceptible of occupancy. We think this conclusive, and if we are correct, the bill must be dismissed with costs.

CHRISTIANCY, J.

This was a bill to foreclose a mortgage (executed by the defendant to the complainant) of a certificate of purchase of forty acres of University land (which for the purposes of this case may be treated as a mortgage upon the land itself), to secure the payment of two thousand two hundred and sixty-five dollars, in three equal annual installments, at ten per cent. interest, to be paid annually. The mortgage was dated January 16, 1861.

The defendant, by his answer, relies upon two separate grounds of defense;

COOLIDGE *v*. WELLS.

*First:* That he was a married man; that his wife did not join in the mortgage, and that the land was his homestead, and exempt as such from sale on the mortgage; and,

*Secondly:* That he also, at the same time and to secure the same debt, executed to the complainant a chattel mortgage upon a nursery of fruit trees, shrubbery and vines then growing on said lands, and upon certain other fruit trees, shrubbery and vines then growing upon other lands. And he alleges that in March, 1862, the complainant took possession of the land described in said certificate, and had the use, occupation, rents and profits of the same, for which he asks that complainant may account. That defendant entered the army of the United States in the fall of 1861, and continued in the army at the time of his answer, (July, 1864.) That complainant also took possession of said trees, shrubbery, and vines, and forbid the agents of defendant from cultivating, or having anything to do with them; that he wrongfully and intentionally neglected and refused to take care of, trim, and cultivate said trees, shrubbery, &c., by means of which they were greatly damaged, and lessened in value to the amount of three thousand dollars; that complainant sold the trees, &c., under said chattel mortgage for about one hundred and fifty-three dollars, being less than one twelfth part of their value; claims that such damage should be ascertained by proof, and credited and allowed to him, and alleges that complainant is indebted to him in the sum of twenty-three dollars for farming and gardening tools, which he asks may be allowed in set off.

A replication being filed, evidence was taken on both sides, and the case brought to a hearing upon pleadings and proofs. The Circuit Court dismissed the bill without costs, and " without prejudice in any action at law hereafter to be instituted by said complainant against said defendant:" and the case comes to this Court by appeal from this decree.

COOLIDGE *v.* WELLS.

Upon what ground the bill was dismissed does not expressly appear.

*First:* As to the defense of a homestead, we see no ground upon which this defense can be maintained. The most that the evidence shows is that the defendant contemplates, at some future time, building a dwelling house upon the land and going there to reside with his family. But it expressly appears from the evidence that no dwelling house had ever been erected or even commenced upon the land, and that neither the defendant nor any of his family had ever resided upon it.

Neither the Constitution nor the statute has undertaken to exempt a *merely contemplated future homestead.* Both leave the parties first to make or obtain a homestead *in fact,* and then apply the exemption to the homestead thus acquired. Neither has undertaken to furnish homesteads, or the means of obtaining them, to those who have none. And as held by this Court in *Beecher v. Baldy, 7 Mich., 501,* the land which is to be exempted as a homestead must contain the dwelling house, and must constitute a homestead *in fact.*

*Secondly:* As to the other grounds of defense set up in the answer, while the evidence shows that there were certain sums received for which he should account, and which should be applied in reduction of the mortgage debt, it wholly fails to show that the complainant had prevented the defendant or his agents from properly cultivating, trimming and taking care of the nurseries; and in all respects it fails to establish a complete defense, or to show any proper ground for dismissing the bill. And we are satisfied this part of the defense set up by the answer was never passed upon by the Court. And the case being clearly one of equitable cognizance, we can see no ground upon which the Court could have dismissed the bill, unless upon the erroneous view that the evidence established a homestead exemption. Such we think must have been the view taken by the Court.

The evidence presents a case in which an account should be taken, and we should not feel authorized without a reference for that purpose to determine upon this appeal, the amount which should be allowed to the defendant in reduction of the mortgage debt. In determining this amount several questions may be raised, and some of them have been argued by the defendant's counsel; but the counsel for the complainant, from the view they have taken of the case, have not deemed it necessary to argue them. We might perhaps determine some of these questions, and lay down some of the principles which should govern the accounting. But as we are satisfied this part of the case has not yet been considered by the Circuit Court, we think it better to leave all questions touching the account and the sums to be allowed to the defendant, to be first adjudicated in that Court.

The decree dismissing the bill must be reversed with costs, and an interlocutory decree of foreclosure and sale must be entered in this Court, and the case must be remitted to the Circuit Court for such further proceedings as may be necessary for stating an account between the parties and ascertaining the amount to be allowed to the defendant in reduction of the mortgage debt, and for making the decree final and carrying it into effect.

The other Justices concurred.