CHARLES RESKE v. HENRIETTA RESKE.

*Homestead right*

A city lot, purchased by a single man in contemplation of his marriage,
and with the intention of making it a homestead, will be exempt
as such from the levy of execution, even before any dwelling is
erected on it, if the man and his wife have enclosed, improved and
used it with the constant purpose of making it their home as soon as
their means would permit.

Appeal from the Superior Court of Detroit. (Chipman,
J.) October 12.—October 17.

INJUNCTION bill to restrain enforcement of execution.
Complainant appeals. Reversed.

*John Atkinson* and *Isaac Marston* for complainant.

*C. J. Reilly* for defendant. No premises can be a home-
stead without a dwelling-house thereon, and the actual resi-

| 51 | 541 |
| 60 | 33 |
| 64 | 328 |
| 64 | 597 |
| 51 | 541 |
| 71 | 154 |
| 71 | 155 |
| 51 | 541 |
| 76 | 126 |
| 51 | 541 |
| e121 | 275 |
| 51 | 541 |
| 126 | 709 |
| 51 | 541 |
| d138 | 72 |
| 51 | 541 |
| 146 | 338 |

dence of the family therein: Smyth on Homesteads § 68; *Cook v. McChristian* 4 Cal. 26; *Cary v. Tice* 6 Cal. 626; there is no such thing as a future contemplated homestead: *Wisner v. Farnham* 2 Mich. 472; *Dyson v. Sheley* 11 Mich. 527; *Coolidge v. Wells* 20 Mich. 79; *Hale v. Heaslip* 16 Ia. 451; *Campbell v. Ayres* 18 Ia. 252; *Christy v. Dyer* 14 Ia. 438; *Elston v. Robinson* 23 Ia. 208; *Benedict v. Burrill* 7 Cal. 246; *Tourville v. Pierson* 39 Ill. 447; *Spaulding v. Crane* 46 Vt. 292; subsequent user as a homestead does not destroy a prior levy or lien: *Avery v. Stephens* 48 Mich. 246; *Upman v. Second Ward Bank* 15 Wis. 449; *Kelly v. Dill* 23 Minn. 435.

COOLEY, J. The bill in this case is filed to protect a homestead right, and to enjoin a threatened sale upon execution.

The facts appear to be that in January, 1880, complainant purchased a city lot on the corner of Chene and Mother streets, in Detroit, intending to make of it a homestead. He was then a single man, but was anticipating the arrival very shortly of a young woman from Germany whom he was to marry. The woman came on, and they were married immediately, according to the previous expectation. Neither of them seems to have had means, but they caused the lot to be fenced, and commenced making use of it in connection with the business of selling wood. A barn and a shed were built, a well was dug, complainant kept his horses on the lot, and also hogs and poultry. Mrs. Reske assisted her husband in his business, and received orders for wood, and wood, to some extent, was piled on the lot for sale. At first, complainant lived with his wife at some considerable distance from the lot, but soon took board across the way, and remained there while building. In the spring of 1881 complainant talked with a builder about the cost of a house, and obtained his figures, but not being able to go on then, the matter was left in abeyance. As complainant and his wife earned anything, they put it in improvements on the lot; to give his language: "I built every

·day as soon as I got a little money ahead." It was towards the end of 1882 before they were able to put up a house, and they were not living in this until January, 1883.

Meantime defendant, on November 28, 1882, had obtained a judgment against complainant for $546.77 and costs, and by virtue of an execution on this judgment had caused levy to be made upon this lot before complainant had commenced building his house, and was proceeding to a sale when this bill was filed. The value of the lot, as now improved, is shown to be under fifteen hundred dollars. Defendant, by her answer to the bill, contests the fact of the lot having been purchased by complainant for a homestead, and gives evidence of statements made by him that he bought the lot for use in connection with his business. We are entirely satisfied, however, that his intention to make it a homestead existed from the time of purchase, and that he proceeded to do so as rapidly as he could earn the means.

The question now is whether, on the facts recited, the lot had become a homestead in a legal sense before the levy was made upon it. We are of opinion it had. The lot, as has been said, was procured for the purposes of a home, and complainant, aided by the industry and frugality of his wife, was proceeding to make it such as rapidly as their limited means would permit. They inclosed it; they had their domestic animals upon it; they came to live in the immediate vicinity; they made a well; and they put up outbuildings. Everything but the dwelling proper had been erected before the levy was made, and complainant was bargaining with a builder for a house. If anything was lacking to make the lot a homestead, it was because the poverty of complainant had precluded his advancing his improvements as rapidly as he desired. The lot, however, in the minds and hearts of complainant and his wife, had been appropriated as a home from before the day of their marriage: it was all the home they had; it represented all their scanty means, and was the center of their domestic hopes and aspirations. They did not as yet sleep upon it or take

their meals upon it; and probably if they had done this in some of the buildings already constructed, their right to claim a homestead would not have been disputed. But this is not an indispensable condition: the man who buys a home which is all ready for occupancy, cannot have it taken from him as he is attempting to move in his goods, because he has not yet eaten or slept within it. Any one might be deprived of a homestead if so narrow a construction of the privilege should prevail. It is people like this complainant and his wife, with very limited means, that the law encourages with its promise to save their home to them if they will but secure one; and it would be a deceptive promise if it were only made on conditions which any creditor might so easily defeat. We think it was meant to be effective in cases like the present, and that complainant is entitled to the relief he prays.

Decree will be entered for complainant with costs of both courts.

The other Justices concurred.