## JOHN DEVILLE v. JESSE WIDOE.

*Homestead—Exemption from execution—Occupancy.*

| 64 | 593 |
|---|---|
| e121 | 276 |
| 64 | 593 |
| 126 | 709 |
| 64 | 593 |
| d138 ¹ | 72 |

1. A city lot purchased with the *intention* of making a homestead for the purchaser and his family will be exempt from levy and sale on execution from the date of such purchase, even though unimproved and without a dwelling-house thereon, if the purchaser incloses and uses and occupies it with the *constant purpose* of making it his home, and uses the proceeds realized from such use, and such means as he can procure, within a *reasonable time*, to erect a house thereon for his family, provided it does not exceed in quantity and value the constitutional limits. What will be regarded a reasonable time must necessarily depend upon the circumstances of each particular case.

2. Under the circumstances of *this* case (see opinion), the time taken by complainant cannot be considered unreasonable.

Appeal from Kent.    (Montgomery, J.)    Argued January 13, 1887.    Decided January 27, 1887.

Bill filed to set aside a levy on a homestead.    Defendant appeals.    Decree affirmed.    The facts are stated in the opinion.

*Frank G. Holmes*, for complainant.

*R. W. Powers* (*Peter Doran*, of counsel), for defendant.

SHERWOOD, J.    The bill in this case is filed by the com-

plainant, and prays that a certain execution levy upon his house and lot, situate in Grand Rapids, may be set aside and declared void, for the reason that at the time of the levy the property consisted of one lot worth less than $1,500, and was his homestead.

The case was heard in the Kent circuit, before Hon. Robert M. Montgomery, circuit judge, upon pleadings and proofs, and a decree was made granting the relief prayed. After a careful inspection of the record, I have no doubt of the correctness of the conclusion reached by the learned circuit judge. The following facts, I think, are sufficiently established by the pleadings and proofs in the case:

The complainant purchased the lot in question, which was then vacant, and which was about 47 feet wide, on Plainfield avenue, of Charles W. Coit, on the twenty-fourth day of October, 1881. He has never owned any other real estate since. The lot contains about an acre, consisting of part of a platted lot, and was located, when bought, in a thickly-settled district,—residence property mostly on either side of it.

When the property was sold to the complainant, the vendor understood it was for a homestead, and the complainant purchased it with the intention of making it his homestead, as well as a place upon which he could carry on his business, which was selling meat.

He paid $800 for the lot,—paid $200 down, and gave a mortgage upon the property to secure payment of the balance, —and commenced improving the lot November 10 after the purchase.

At the time of the purchase he was engaged in carrying on a meat-market on the same street, near the property. His ground-lease having expired, he moved the little shop in which he was doing business onto his own lot, placing it about 50 feet back from the street. His plan, however, was to erect a building on the front of his lot sufficiently large and suitable for carrying on his little meat business, and fur-

nish him a comfortable residence for his family; and very soon after taking possession of his lot, in the month of November, he made an unsuccessful effort to raise the money to build such a building. He then decided to erect so much of the building as would be necessary for his business purposes, and in such manner that he could thereafter add thereto the part he had intended for the residence of his family when he could get the necessary means. This he did, and in January following built an ice-house on the lot for the use of his market and family, and in November, 1882, built a barn upon the premises for the accommodation of the horse he used in his business.

In this condition the complainant used the property during the year 1883, making several efforts, however, during the year, with one or more parties, to negotiate a contract for building the residence in connection with his market as hereinbefore mentioned. He did not succeed in making the arrangement for putting up the addition to his building, which was to constitute the apartments and home for his family, until the month of July, 1884, when he made a contract for the lumber, and dug a cellar for the building. The party who furnished the lumber for the completion of the building commenced delivering it upon the ground on the second day of August, 1884, and the building was completed, and the complainant moved into it, with his family, a few months thereafter.

After the building was completed, the assessor valued the property at $1,000. From the time the complainant took possession of the property until he moved his family into the building, he occupied the property himself. He used the building first erected for his meat-market, fenced the lot, and raised upon it vegetables for his family, and some feed for his horse, and, so far as we can discover from the record, designed the property for his homestead, and so expressed himself in regard to the property whenever he had any con-

versation upon the subject of its improvement, or whenever any person, in like circumstances, would be likely to give expression to his intentions.

On the sixth day of August, 1884, defendant held a judgment in his favor against the complainant, and caused the same, on that day, to be levied upon the property. Some time after the levy was made, complainant notified defendant that the property levied upon was his homestead, and asked him to release and discharge his levy. This defendant refused to do, claiming that the property was not complainant's homestead, and instructed the sheriff to proceed with his levy, and advertise and sell the property, who proposed to obey the instruction of defendant; and thereupon the complainant filed this bill.

The only question in the case needing consideration is, was the property the complainant's homestead? There can be no question, if it was, but that the defendant's levy clouded the complainant's title. We think it was shown to be within the constitutional limit as to size and value. It was incumbered by mortgage at the time of the levy to the amount of about $478; and it sufficiently appears that, as fast as the complainant was able, he improved the property, with a view of making it his homestead, and had really commenced the erection of that portion of the building which he designed for, and which, as soon as completed he occupied for, the residence of himself and family. We have no doubt about the good faith in which all the improvements were made, and under such circumstances it would be, in our judgment, inequitable and unjust to attempt to divest the property of its homestead character.

We think the case falls clearly within the spirit of the Constitution and statute providing for the exemption of a homestead, and the decisions of this Court made thereunder.

A city lot purchased with the intention of making it a homestead for the purchaser and his family will be exempt

from levy and sale on execution from the time of purchase, even though unimproved and without a dwelling thereon, if the purchaser encloses it and uses and occupies it with the constant purpose of making it his home, and uses the proceeds thereof, and such means as he can procure, within a reasonable time, to erect a house thereon for his family, provided it does not exceed in quantity and value the constitutional limit.

What will be regarded as a reasonable time must necessarily depend upon the circumstances of each particular case.

The following authorities will be found to give support to the views herein expressed: *Reske v. Reske,* 51 Mich. 541; *Barber v. Rorabeck,* 36 Id. 399; *Bouchard v. Bourassa,* 57 Mich. 8; *Griffin v. Nichols,* 51 Id. 575. See, also, *Scofield v. Hopkins,* 61 Wis. 370 (21 N. W. Rep. 259).

We do not think, under the circumstances of this case, that the time taken by the complainant to improve the lot, in such manner as to make a comfortable home for himself and family, was unreasonable; and the decree of the circuit judge must be affirmed.

CAMPBELL, C. J., and CHAMPLIN, J., concurred. MORSE, J., did not sit.