EVAN BOWLES v. CHARLES P. HOARD AND THE UPTON MANUFACTURING COMPANY.

*Homestead—Exemption from execution—Occupancy—Husband and wife—Divorce—Dower—Mortgaged premises—Surplus on sale.*

1. Actual residence upon land intended for a homestead is not an indispensable condition to its being in law a homestead, and, as such, exempt from levy and sale upon execution. *Reske v. Reske*, 51 Mich. 541; *Deville v. Widoe*, 64 Id. 593.

2. A party claiming unoccupied land exempt from execution, as a homestead, must show an intention on his part to occupy it as such, and that such intention existed prior to and at the time of such levy; and if it was conceived after the levy, and for the purpose of defeating the lien thereby created, it cannot be upheld, although a dwelling is erected or moved upon the land, and occupied by the owner and his family, after such levy and before sale.

3. Land not occupied as a homestead is *prima facie* subject to levy and sale on execution, and its exempt character must be determined upon the facts as they existed when such levy was made.

4. A wife entitled to dower under How. Stat. § 6246 (*Percival v. Percival*, 56 Mich. 297), on a divorce from her husband, is entitled to dower in the surplus arising upon a foreclosure sale under a mortgage executed prior to their marriage. How. Stat. §§ 5735, 5737.

Appeal from Shiawassee. (Newton, J.) Argued April 19, 1888. Decided July 11, 1888.

Appeal from order awarding surplus on foreclosure sale. Decree reversed, and case remanded with instructions, etc. The facts are stated in the opinion.

*Lyon & Hackleman*, for Ella L. Bowles, claimant of surplus.

*James M. Goodell*, for appellant, Upton Manufacturing
Co.

. CHAMPLIN, J.    This is an appeal from an order of the
circuit court for the county of Shiawassee, in chancery,
awarding the surplus arising from a foreclosure sale to
Ella L. Bowles, the divorced wife of defendant Charles
P. Hoard.

The undisputed facts appear to be as follows:   Solomon
H. Hoard died about 14 years ago, seized of the W. $\frac{1}{2}$ of
the S. W. $\frac{1}{4}$ of section 33, town 6 N., range 3 E., being
in the township of Shiawassee; also the north 53 acres of
the W. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of section 4, township 5, N.,
range 3 E., being in the township of Antrim, comprising
a farm of 133 acres.   He left a widow, Annis Hoard, and
three children, Chauncey, Charles P., and Alice Hoard.

Several years after his death, his children made an
amicable division among themselves of the farm, excepting
40 acres, consisting of the south 17 acres of the 80 in
Shiawassee township, and the north 23 acres in Antrim,
upon which was the house occupied as a homestead by the
widow; Charles P. taking the 33 acres next north of the
homestead 40, Chauncey taking the north 30, and Alice
the south 30, acres of the farm.   The diagram showing
the division made will be found on next page.

After the above arrangement was made, the defendant
Charles P. continued to live with his mother in the house
upon the homestead 40, in which he owned an undivided
one-third interest, and farmed the same in connection with
his 33 acres, of which 16 or 18 acres were cleared and fit
for cultivation, but there were no buildings thereon at the
time of the divison.

October 1, 1882, Charles P. Hoard was married to Ella
L. Bowles.   They immediately went to live with his

SHIAWASSEE TOWNSHIP.

NORTH.

Chauncey Hoard.

30 acres.

16 or 18 acres improved.

Chas. P. Hoard.

33 acres in question.

17 acres.
Undivided.

Town                     Line.

House in Antrim.

23 acres.

Occupied by Annis Hoard.

Undivided.

Alice Hoard.

30 acres.

ANTRIM TOWNSHIP.

mother. It was talked, at the time of the division, that Charles was to take care of his mother; and after her death, or before, the brothers were each to pay their sister $75 for her interest in the 40, and, after the mother's death, Chauncey and Charles were to make a new division, by which Charles should take the south half, and Chauncey the north half, of 103 acres. This talk has never been consummated, although Charles P. has paid the agreed price to his sister. Chauncey has not. Ella L· took no furniture to the house, except one bed and bedding. They lived together as one family from October, 1882, to April, 1884; the defendant working all the land as he had previously.

In 1883, Charles sold some logs from the 33 acres to Frank Herrick, but refused to sell more, because, as he told Herrick, he did not know but he was going to build. This was in January, 1883, and the levy of the execution, as will appear hereafter, was not made until January, 1884. In the fall of 1883, Charles spoke to Henry Goodrich to build a house for him on this land, but afterwards, the next March, he told Goodrich he should not build until after planting.

December 27, 1883, an execution was issued out of the circuit court against Charles P. Hoard, Chauncey Hoard, and Charles P. Conklin, in favor of the Upton Manufacturing Company, and was levied upon the 33 acres of Charles P., and other lands, on January 21, 1884.

In June, 1884, Evan Bowles gave to his daughter, then Ella L. Hoard, the wife of Charles, a small house, which was moved onto this 33 acres, and then Charles P. and his wife moved into the house and lived there until October 1, 1884, when his wife left him, and commenced proceedings for a divorce.

Ella L. Bowles testified that her husband said he would build a house on his farm; that after they were married,

and went to live at his mother's, they did not intend to live with her, but intended to make their home on this farm of his, as she supposed, and that he always said so; that he talked about building on this place, and told her he went once to get lumber to build on the place; that this was in the fall of 1883.    The reason he did not do so he said was they would not trust him.

September 12, 1884, the Upton Manufacturing Company commenced to advertise the land for sale on the execution, and on October 30, 1884, Charles P. Hoard notified the sheriff in writing that he claimed the land in question as his homestead.    The land was sold on November 8, 1884, on the execution, to the Upton Manufacturing Company, and has not been redeemed.

Ella L. Hoard filed a bill for divorce against her husband, and on May 15, 1885, she obtained a decree dissolving the marriage, and granting her $500 permanent alimony, which by the decree was declared to be a lien upon the 33 acres of land in dispute.

May 9, 1882, Charles P. Hoard executed a mortgage upon this land to Lewis W. James for $300, who assigned the same to Evan Bowles, the father of Ella L.    He foreclosed the mortgage, and on a sale under the foreclosure proceedings a surplus was realized of $413.64.    This surplus has been paid into the register of the court.    The Upton Manufacturing Company has filed a petition claiming the same by virtue of the execution levy and sale, and Ella L. Bowles, the divorced wife of Charles P. Hoard, claims the same by virtue of the decree, and on the ground that the land was a homestead, and not liable to a levy and sale for her husband's debts.

It was held in *Reske v. Reske,* 51 Mich. 541 (16 N. W. Rep. 895), that actual residence upon property intended for a homestead is not an indispensable condition to its being in law a homestead, and, as such, exempt from levy

and sale upon execution; that the question is whether, on the facts of the particular case, the land became a homestead in a legal sense before the levy was made upon it. To bring it within the exemption, when it is not actually occupied as such at the time of the levy, it must satisfactorily be made to appear that the intention in good faith exists to occupy it as such, and such intention must have existed prior to and at the time of the levy. If the idea was conceived after the levy, and for the purpose of defeating the lien created thereby, it cannot be upheld, although a dwelling, after the levy and before sale, is erected or moved upon the premises, and occupied by the owner and his family. In *Reske v. Reske,* the testimony was such as to satisfy this Court that it was the intention of Reske to make the lot a homestead when he purchased it, and that such intention existed from the time of such purchase, and that he proceeded as rapidly as he could earn the means. There was no evidence in that case leading to a contrary conclusion.

In this case the testimony is conflicting respecting the intentions of Charles P. Hoard. That pointing in that direction comes from those who had heard him say that he intended to build on the land, but nothing whatever was done in furtherance of such intent until after the levy, when a house was moved upon the place from his father-in-law's. This was after the levy. The act was therefore questionable whether it was done in good faith to carry out a design formed before the levy, or for the purpose of defeating the levy. The impression given by the testimony is that the building was not much of a dwelling. Charles Ford says that Charles P. told him that he thought the house which he moved on there would do for a granary, and did not intend to live in it when he got so he could build. He moved into the house

in June, and he and his wife occupied it about three months.

Charles P. Hoard was not examined as a witness, and his intentions as to living upon the 33 acres as a homestead are gathered from the testimony of witnesses as to what he had told them. The facts showing a contrary intention are uncontradicted, and are quite convincing. Mrs. Annis Hoard and Chauncey P. Hoard both testify to the division of the property as above stated, and both say that it was the intention that Charles should remain with his mother on the homestead, and take care of her, and, either before or after her death, Chauncey and Charles should buy out their sister's interest in the 40 for $75 each, and, after their mother's death, they were to make a new division, and Charles was to take his off from the south. This would include the whole of the homestead upon which the mother's house was, and the south 13 acres of the 33-acre tract. He paid his sister the $75, and he occupied and tilled all the land included in the homestead and the 33-acre tract, and continued to do so after his marriage; that is, from October, 1882, to April, 1884, when his wife went to her father's to live, and did not intend to return to live at his mother's again. It will be noted that the levy had been made in January, 1884. It is clear that Charles P. did not, at the time of the division, intend his 33-acre tract for a homestead, but his intention was to occupy the parcel containing the dwelling until his mother's death, and then, by a future division, to convey to his brother, Chauncey, the greater part of the 33-acre tract in exchange for his interest in the homestead. And I feel satisfied that such intention continued until the levy was made. After that time the plan was changed. Evan Bowles held the mortgage upon the 33 acres. Ella L., his daughter, had resolved upon

being divorced.    What followed is more consistent with a design to defeat the levy by a claim that this 33 acres was a homestead than that the defendant Charles P. had previously in good faith designed to make a homestead of such land.    Evan Bowles furnished a house to be placed on the land, and the son-in-law and wife occupy it for three months, and then she leaves him, and applies for a divorce for causes which existed prior to their removal upon the place.    A decree for alimony is obtained, which is made a lien upon the land, which she claims has precedence to the levy.    The case must be determined upon the facts as they existed at the time the levy was made. The land, being unoccupied as a homestead at that time, was *prima facie* subject to be levied upon, and the testimony fails to satisfy me that it was at that time, or had been, the intention of Charles P. Hoard to occupy the 33 acres as a homestead.

It follows that the decree must be reversed.    We cannot, however, enter a decree here in favor of the Upton Manufacturing Company, for the reason that the record is defective, in that it does not show all the facts upon which a final decree for distribution should be entered. The record discloses that the mortgage under which the surplus arises on sale was executed by Charles P. Hoard previous to his marriage with Ella L. Bowles.    It also shows that she has been divorced, but the cause for which the decree was granted is not stated.    If it was granted for certain causes named in section 6246, How Stat., his wife would be entitled to dower in his lands in the same manner as if he were dead.    *Percival v. Percival*, 56 Mich. 297 (22 N. W. Rep. 807).    And, under sections 5735 and 5737, she would be entitled to dower in the surplus arising under the foreclosure sale in this case.    4 Kent, Comm. 45.

The case will therefore be remanded to the circuit court,

and that court will take such steps as it deems advisable to ascertain whether Ella L. Bowles is entitled to share in the surplus as the divorced wife of Charles P. Hoard; and, if so, to make such decree as will protect her rights in such surplus. If she is not, it will enter a decree directing the payment of such surplus to the Upton Manufacturing Company, and, in any event, directing two-thirds of such surplus to be paid to it as the purchaser of the equity of such redemption ; Upton Manufacturing Company to recover its costs of this Court against said Ella L. Bowles.

SHERWOOD, C. J., MORSE and LONG, JJ., concurred. CAMPBELL, J., did not sit.