### WARE *v.* HALL.

HOMESTEAD—VACANT LOT—OCCUPANCY—INTENTION.

> A widow, having only married children, and no means with which to build a house, or prospect of any, cannot claim homestead rights in a vacant lot which she has owned for $3\frac{1}{2}$ years, and occupied only by making garden thereon.

Appeal from Berrien; Coolidge, J. Submitted September 13, 1904. (Docket No. 185.) Decided October 26, 1904.

Bill by Mary Jane Ware against Charles W. Hall to set aside an execution levy. From a decree for complainant, defendant appeals. Reversed.

The object of this bill is to cancel an execution levy made upon a vacant lot in Benton Harbor, which complainant claims as a homestead. The sole question presented by the record is whether she had taken sufficient steps to establish and maintain this lot as a homestead. She formerly lived in Kalamazoo, where she owned a lot and a small house, in which we may infer (though it does not clearly appear upon the record) that she lived. In

September, 1899, she sold that house and lot for $375, out of which she paid a mortgage upon them for $250. She then moved to Benton Harbor, where some of her children were living. While living there with her son she purchased the lot in question, for which she paid $150. She is a widow having four children, all of whom are married. She testified that they contributed a little towards her support. Subsequently she rented a house of the defendant, failed to pay the rent, and he brought suit therefor, obtained a judgment, and levied upon this lot in June, 1903. The lot was vacant when purchased, and was never occupied by her in any other manner or for any other purpose than to raise some vegetables upon it during the summer. It does not appear that it was fenced. Her son set out two small maple trees for her in front of the lot, but not at her request. She afterwards paid him 40 cents apiece for them. There were also two or three peach trees upon the lot. She had no money with which to build a house or even to pay her rent. She never made any plans for building, and testified that the reason was that she was too poor.

*John J. Sterling*, for complainant.

*Harris S. Whitney*, for defendant.

GRANT, J. (*after stating the facts*). Where one buys a piece of land with the intention of soon thereafter erecting a building thereon for the sole purpose of a homestead, there is reason in holding that such land comes within the protection of the Constitution as a homestead, and that he will have a reasonable time in which to erect the building. That is not this case. For three years and a half complainant had owned this lot. It could not exist indefinitely as a homestead in her intention alone. Something must be done within a reasonable time towards making it such a homestead. There was no such occupancy as, under any of the decisions cited, has been held to constitute a homestead. From her own testimony there was no imme-

diate or remote prospect that she could erect a house. She testified that her son, who was a carpenter, said that some time when he got able he would erect a house on the lot and give it to her. That was the only prospect she had. The facts are entirely different in the cases relied upon. *Reske* v. *Reske*, 51 Mich. 541; *Deville* v. *Widoe*, 64 Mich. 593; *Mills* v. *Hobbs*, 76 Mich. 126; *Corey* v. *Waldo*, 126 Mich. 706.

*Corey* v. *Waldo* comes nearest to sustaining the plaintiff's contention. But in that case the defendant and his wife were "proceeding as rapidly as circumstances would permit" to convert a homestead, which had been condemned by the city of Detroit for the purpose of opening a street, into another homestead composed of the lot which had been levied upon. Mr. Waldo was able to erect buildings thereon as a homestead, and we held that the reasonable time for him to carry that intention into effect by the occupancy which the Constitution and law require had not expired. Here the naked question is, Can one utterly insolvent, without any ability to earn money sufficient even to support herself, without any prospect of getting money to erect a building thereon, hold land indefinitely as a homestead? To so hold would be in direct opposition to the language of the Constitution and the law, which require ownership and occupancy combined. In all the cases cited, except possibly *Corey* v. *Waldo*, there were some acts of occupancy. Intention without occupancy cannot create a homestead, for the Constitution requires occupancy as well as intention. There must be some acts which, coupled with the intention, constitute the necessary occupancy.

Decree reversed, and bill dismissed.

The other Justices concurred.