### LEMERISE *v.* ROBINSON.

1. HUSBAND AND WIFE — EXEMPTIONS — PROPERTY PURCHASED BY HUSBAND'S MONEY NOT EXEMPT ALTHOUGH TITLE HELD BY ENTIRETIES.

    A lot held by husband and wife by the entireties is not exempt from levy for the husband's debt, although it was purchased on contract before the debt was incurred, where most of the consideration was paid thereafter, and it does not appear that the wife contributed anything toward it.

2. HOMESTEADS—VACANT LOT MAY BE EXEMPT WHERE INTENTION OF MAKING IT A HOMESTEAD CONTINUES BUT NOT OTHERWISE.

    Under the Constitution (Art. 14, § 2), a vacant lot may be exempt as a homestead if it is purchased with the intention of making it a homestead and it is inclosed, used, and occupied with a constant purpose of making it such, and a dwelling house is erected thereon within a reasonable time after acquisition; but where a lot has been owned

[1]Husband and Wife, 30 C. J. § 106; [2]Homesteads, 29 C. J. § 50; 50 L. R. A. (N. S.) 1128; 13 R. C. L. 593.

for several years, no improvements have been made, and it does not appear that the intention to make it a homestead has continued to the present time, it is not exempt as a homestead.

3. SAME—VACANT LOT ADDED TO COMPLETE HOMESTEAD NOT EXEMPT.

Where a homestead was complete before an adjoining vacant lot which did not add materially to the enjoyment of the homestead except to provide a driveway to reach the dwelling was purchased, the fact that both properties were inclosed with a fence and used together would not render the vacant lot exempt as a homestead.

4. HUSBAND AND WIFE — EXEMPTIONS — ESTATES BY ENTIRETIES CREATED BY HUSBAND'S MONEY NOT EXEMPT.

Nor is a vacant lot exempt from levy for the husband's debt on the ground that it is held by him and his wife as tenants by the entireties, where the funds used to purchase it ought in good conscience to have been applied on the debt.

5. EXEMPTIONS — WAGES OF HUSBAND EXEMPT FROM GARNISHEE PROCESS NOT EXEMPT AFTER PAID ON LAND CONTRACT.

That 30 per cent. of a husband's wages was exempt from garnishee process does not render it exempt from levy for his debt after it was paid on a land contract taken in the names of himself and wife.

Appeal from Wayne; Merriam (De Witt H.), J. Submitted October 4, 1927. (Docket No. 1.) Decided February 14, 1928.

Bill in aid of execution by Frank Lemerise against Alfred Robinson, Albert M. Jaeger, and others. From a decree dismissing the bill, plaintiff appeals. Affirmed in part and reversed in part.

*Charles L. Mann,* for plaintiff.

*Louis F. Hawkins,* for defendants Robinson.

*Ignatius J. Salliotte,* for defendants Jaeger.

[3]Homesteads, 29 C. J. § 117 (Anno); [4]Husband and Wife, 30 C. J. § 106; [5]Exemptions, 25 C. J. § 115.

BIRD, J. Plaintiff recovered a judgment of $3,404.52
in the Wayne circuit court against defendants Alfred
Robinson and Albert Jaeger for a balance due him
on a promissory note, dated April 28, 1920. He caused
a *fieri facias* to be issued thereon, and the same was
levied upon lots 16, 34, and 35 of Cherry Grove sub-
division in the village of Ecorse. To determine the
efficacy of the levy this bill in aid of execution was
filed.

Lot 16. This lot was purchased in May, 1919, on
contract by Albert Jaeger and his wife, Ella. One
hundred dollars was paid upon the execution of the
contract, and $10 a month was paid thereon until
May 12, 1924, when the parties received a deed. It
will be noted that most of the consideration paid for
the lot was paid after the note was given, and it does
not appear that the wife contributed anything toward
the consideration. In view of this, the fact that they
were tenants by the entirety would avail them nothing.
*Newlove* v. *Callaghan*, 86 Mich. 297, 300, was a
similar case, and the court said:

"It would be a gross injustice to permit debtors
to apply moneys which should be applied to the pay-
ment of their debts to the creation of an estate which
would be beyond the reach of their creditors.  *  *  *
In other words, estates in entirety cannot be created
at the expense of creditors, and held in fraud of the
latter's right."

And defendants could not avoid this conclusion from
the fact that they purchased the lot on contract a few
months before the husband became obligated on the
note. *Michigan Beef & Provision Co.* v. *Coll*, 116
Mich. 261, 262. In this case the same point was made,
but the court said:

"We may properly infer that all of Coll's property
is in this land, and that considerable was paid upon
the contracts which he should have paid to his creditor,
suit being then pending. This was not justified by

the fact that he had outstanding contracts, and we think should be no more beyond reach than as though the entire title had passed to the wife, as said in *Newlove* v. *Callaghan.*"

Our conclusion is that lot 16 was not protected from levy by reason of the fact that it was held by Jaeger and his wife as tenants by the entirety.

The lot is also claimed to be exempt because it is a homestead.    This presents the question whether a vacant lot purchased in May, 1919, on contract and a deed received therefor in May, 1924, and no improvement made thereon before the day of levy, is exempt as a homestead.

The constitutional exemption provides that:

"Every homestead of not exceeding 40 acres of land and the dwelling house thereon and the appurtenances to be selected by the owner thereof and not included in any town plat, city or village, or instead thereof, at the option of the owner, any lot in any city, village or recorded town plat, or such parts of lots as shall be equal thereto, and the dwelling house thereon, and its appurtenances, owned and occupied by any resident of the State, not exceeding in value fifteen hundred dollars, shall be exempt from forced sale on execution or any other final process from a court."   *   *   * Michigan Constitution, Art. 14, § 2.

Statutory homestead is defined in section 12888, 3 Comp. Laws 1915.

In the early case of *Coolidge* v. *Wells*, 20 Mich. 79, the court held that a 40-acre tract with no dwelling upon it, and upon which the judgment debtor did not reside, was not protected as a homestead, under the foregoing constitutional provision.    In the course of the opinion it was said:

"As to the defense of a homestead, we see no ground upon which this defense can be maintained.    The most that the evidence shows is that the defendant contemplates, at some future time, building a dwelling house upon the land and going there to reside with

his family. But it expressly appears from the evidence that no dwelling house had ever been erected or even commenced upon the land, and that neither the defendant or any member of his family had ever resided upon it.

"Neither the Constitution nor the statute has undertaken to exempt a *merely contemplated future homestead.* Both leave the parties first to make or obtain a homestead *in fact* and then apply the exemption to the homestead thus acquired. Neither has undertaken to furnish homesteads, or the means of obtaining them, to those who have none. And as held by this court in *Beecher* v. *Baldy,* 7 Mich. 501, the land which is to be exempted as a homestead must contain the dwelling house, and must constitute a homestead *in fact.*"

Since that holding, however, the court has held that one may have a homestead' in a vacant lot, if purchased with the intention of making it a homestead for himself and family, and incloses it and uses and occupies it with a constant purpose of making it his home, and erects thereon a dwelling house within a reasonable time after acquisition. The following cases support this liberal construction of the constitutional provision: *Reske* v. *Reske,* 51 Mich. 541 (47 Am. Rep. 594); *Deville* v. *Widoe,* 64 Mich. 593 (8 Am. St. Rep. 852); *Mills* v. *Hobbs,* 76 Mich. 122; *Corey* v. *Waldo,* 126 Mich. 706.

These cases make important the fact of the continued intention to make the vacant lot a homestead within a reasonable time after acquisition. In the present case the Jaegers acquired the lot in 1919. In 1924 they received a deed, and nothing has since been done to evidence a continued intention to make it a homestead. It does not appear that the lot has been fenced or worked as a garden, it does not appear that shade trees or shrubs have been set out, it does not appear that any improvements have been made, or any outbuildings constructed. It does appear that they purchased it with the intention of making it a homestead. Mrs. Jaeger testified:

"The purpose we had in mind in buying this lot was to build a home on it as soon as we got money enough, but we had never yet got money enough."

It nowhere appears that the intention which they had when they purchased the property has been continued or that they now have such an intention. The homestead could not exist indefinitely in intention alone. The case of *Ware* v. *Hall,* 138 Mich. 70 (67 L. R. A. 313, 110 Am. St. Rep. 301), is much like the present one, and holds that no exemption existed. Our conclusion is that lot 16 was not exempt as a homestead.

Lot 34. It is conceded by plaintiff's counsel that lot 34 is used and occupied by Mr. Robinson and his wife as a homestead and is exempt from process of this character.

Lot 35. Lot 35 adjoins 34, and was conveyed to Robinson and wife. After erecting a dwelling and shop on lot 34 they purchased, in 1922, lot 35. A fence was then placed around both properties. The acquisition of lot 35 did not add materially to the enjoyment of lot 34, except to provide a driveway to reach the dwelling. While it does not appear how large the lots are, it does appear that Mr. Robinson's homestead was complete before purchasing lot 35. We do not think this lot is protected by the homestead law, and as funds were used to purchase this lot which, in good conscience, ought to have been applied upon his obligation to plaintiff, we think the Robinsons can claim nothing on the ground that they held the lot as tenants by the entirety. *Newlove* v. *Callaghan, supra.*

Neither are we impressed with counsel's argument that because 30 per cent. of defendants' wages were exempt from garnishee process that it remained exempt after it was paid on his land contract.

Our conclusion is that lots 16 and 35 are subject to levy and sale. The decree may provide for the sale

of these lots on plaintiff's execution.    The decree of the trial court will be reversed as to these two lots, and affirmed as to lot 34.    The plaintiff will recover his costs.

The foregoing opinion was prepared by the late Justice BIRD and is now adopted as the opinion of the court.

FELLOWS, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred.

Chief Justice FLANNIGAN and the late Justice SNOW took no part in this decision.