McCASLIN v. SCHOUTEN.

1. Fraudulent Conveyances—Application of Individual Assets to Retirement of Debt on Entireties Property.
    Insolvent debtor's use of his individual funds to pay mortgage debt on property held by him and his wife by the entireties was

Transactions voidable because of fraud, see 4 Restatement, Torts, § 871e.
    Constructive trusts and subrogation, see Restatement, Restitution, § 162.
    Constructive trusts formed by wrong by transferor to third person, see Restatement, Restitution, § 168.
    Following property into its product in discharge of obligation or lien, see Restatement, Restitution, § 207.

an attempt to place his individual property beyond the reach of his creditors, constituted a fraud in law, and was not sustainable on ground debtor had a right to prefer one creditor over another (3 Comp. Laws 1929, §§ 13392, 13394, 13395).

2. SAME—FAIR CONSIDERATION.

What constitutes a fair equivalent or a fair consideration under the fraudulent conveyance act must be determined from the standpoint of creditors (3 Comp. Laws 1929, §§ 13394, 13395).

3. SAME—TRANSFER OF DEBTOR'S ASSETS.

A debtor may not give his assets to a stranger or exchange them for some worthless chattel if he is thereby rendered uncollectible to the detriment of his creditors (3 Comp. Laws 1929, §§ 13392, 13394, 13395).

4. SAME—FAIR CONSIDERATION—CONVEYANCE—EXECUTION.

The test for determination of what constitutes a fair consideration or a fair equivalent under the fraudulent conveyance act for a debtor's conveyance is whether the conveyance, which includes every payment of money, renders the debtor execution proof (3 Comp. Laws 1929, §§ 13392, 13394, 13395).

5. SAME—INDIVIDUAL ASSETS USED TO REDUCE MORTGAGE ON ENTIRETIES PROPERTY.

Transaction whereby insolvent debtor transferred his individual assets so as to reduce mortgage against property he and his wife owned as tenants by the entireties was not for a fair equivalent or fair consideration within meaning of fraudulent conveyance act since such conveyance was a fraud in law as to his creditors (3 Comp. Laws 1929, §§ 13392, 13394, 13395).

6. HUSBAND AND WIFE—ESTATES BY ENTIRETIES—EVIDENCE—FRAUDULENT CONVEYANCES.

In judgment creditor's suit to establish a lien against entireties property because of debtor's use of individual assets to reduce mortgage existing thereon, evidence sustained finding that a portion of such reduction was effected through use of separate property of the wife.

7. FRAUDULENT CONVEYANCES—AMOUNT OF JUDGMENT CREDITOR'S LIEN ON ENTIRETIES PROPERTY.

In judgment creditor's suit to establish lien against entireties property because of debtor's alleged use of individual assets to reduce mortgage indebtedness thereon, maximum amount of lien is limited to sum by which the mortgagors' equity was increased through use of the debtor's individual funds (3 Comp. Laws 1929, §§ 13392, 13394, 13395).

8. HUSBAND AND WIFE—SUBROGATION—WIFE'S PAYMENT OF MORT-
GAGE ON ENTIRETIES PROPERTY FROM SEPARATE ESTATE.

In judgment creditor's suit to establish lien against entireties
property because of debtor's use of individual assets to reduce
mortgage indebtedness thereon, amount by which mortgage lien
was reduced through use of wife's separate estate together with
conceded amount of *bona fide* mortgage presently on the
premises have priority over judgment creditor's claim of lien
since wife was entitled to be subrogated to prior mortgagee's
interest to the extent her funds were used in payment of the
prior mortgage.

9. TRUSTS—TRUST EX MALEFICIO—INSOLVENT JUDGMENT DEBTOR'S
PAYMENT ON ENTIRETIES INDEBTEDNESS.

Transaction whereby insolvent judgment debtor made payment on
mortgage indebtedness against property owned by himself and
wife as tenants by the entireties with his individual funds re-
sulted in something akin to a trust *ex maleficio* from which
neither can be permitted to benefit.

10. FRAUDULENT CONVEYANCES—DEBTOR'S USE OF PERSONAL AS-
SETS TO PAY ENTIRETIES INDEBTEDNESS—EXTENT OF JUDGMENT
CREDITOR'S LIEN.

Judgment creditor *held*, entitled to lien against property owned
by judgment debtor and wife as tenants by the entireties because
of use of debtor's individual assets to reduce mortgage indebted-
ness to the extent by which the debt was reduced so as to protect
the equity of entireties property as it existed prior to the wrong-
ful use of the debtor's own assets.

11. HOMESTEAD—TENANCY BY ENTIRETIES.

In judgment creditor's suit to establish a junior lien on property
owned by debtor and wife as tenants by the entireties but sub-
ject to a mortgage, specific determination of the homestead
rights is not made where the homestead is embodied in the en-
tireties property and their equity is in excess of constitutional
exemption of $1,500 (Const. 1908, art. 14, § 2).

12. FRAUDULENT CONVEYANCES—SALE OF ENTIRETIES PROPERTY TO
SATISFY JUDGMENT CREDITOR'S LIEN.

Since an estate by the entireties cannot be created at the expense
of creditors and held in fraud of the latter's right, contention
of wife of debtor who used his individual assets to reduce mort-
gage indebtedness against their entireties property that it
could not be sold upon foreclosure of judgment creditor's lien
*held*, not tenable since so to hold would enable her to benefit

through her husband's wrongful use of his individual funds (3 Comp. Laws 1929, §§ 13392, 13394, 13395).

13. SAME—EQUITY—PRIORITY OF LIENS.

In judgment creditor's suit to establish lien against property owned by debtor and wife as tenants by the entireties because debtor had used individual funds to reduce indebtedness against the entireties property, priority over creditor's lien is given to lien of *bona fide* first mortgage presently incumbering the property and the amount of the wife's separate estate used in reducing the amount of the previous mortgage but not the amount found to be the value of the mortgagors' equity prior to the wrongful use of the debtor's own funds, equity being done creditor by allowing him a lien to the extent by which the original mortgage was reduced through debtor's wrongful use of funds (3 Comp. Laws 1929, §§ 13392, 13394, 13395).

14. JUDGMENT—JUDGMENT CREDITOR'S SUIT TO ESTABLISH LIEN—WIFE'S LIEN ON ENTIRETIES PROPERTY—PRIORITY.

In judgment creditor's proceeding to establish lien upon property owned by debtor and wife as tenants by the entireties, a lien prior to that of the judgment creditor's for amount by which mortgage indebtedness against the property was reduced through use of wife's separate estate is not decreed wife where she made no application for such affirmative relief in her pleadings.

15. COSTS—PARTIES—DENIAL OF RELIEF.

Mortgagee was properly decreed costs against plaintiff in suit brought by judgment creditor of husband to establish lien against property he and his wife held as tenants by the entireties subject to mortgage where plaintiff made the mortgagee a defendant and was properly denied relief against it.

16. SAME—FAILURE FULLY TO SUSTAIN CONTENTIONS ON APPEAL.

No costs are awarded either judgment creditor or defendant debtor and his wife in the creditor's suit to establish a lien on property held by defendants as tenants by the entireties where neither plaintiff nor such defendants fully sustain their respective contentions on appeal.

Appeal from Kent; Verdier (Leonard D.), J. Submitted January 16, 1940. (Docket No. 106, Calendar No. 40,952.)   Decided June 19, 1940.

Bill in aid of execution by William R. McCaslin, receiver of Grand Rapids Savings Bank, against John H. Schouten, his wife, and Michigan Trust Com-

pany, a Michigan corporation, to secure a lien against entireties property subordinate to the lien of defendant trust company. Dismissed as to defendant trust company. Decree for plaintiff. Plaintiff appeals, and defendants Schouten cross-appeal. Modified and remanded.

*Alexander, McCaslin & Cholette,* for plaintiff.

*Smith, Strawhecker & Wetmore,* for defendants Schouten.

NORTH, J. In June, 1937, defendant John H. Schouten was adjudged liable for a statutory stockholder's liability of $10,066.50 to the bank of which plaintiff is receiver. After return of execution unsatisfied plaintiff filed the bill herein and, for reasons hereinafter noted, sought a lien to secure payment upon certain property occupied by defendants Schouten as a homestead and to which they held title as tenants by the entireties. They purchased this property prior to January 30, 1926, and on that date they mortgaged it to the defendant Michigan Trust Company for $15,000. Payments made by Mr. Schouten in June and July, 1937, reduced the mortgage debt to $5,400. The Schoutens claim that of the money paid $1,496 was of funds which belonged to Mrs. Schouten. The balance was of money admittedly obtained by Mr. Schouten from the sale of securities which he owned. He was insolvent at the time the payments were made. In October, 1937, the Schoutens gave a new mortgage to the trust company for $8,000, thereby satisfying the earlier mortgage and obtaining from the trust company $2,600. While the earlier mortgage and note were ᴸarked paid, they were retained by the trust company; and the discharge of that mortgage was not executed by the mortgagee until the hearing of this case was pending. However, that circumstance

is of no material consequence because the *bona fides* of the $8,000 mortgage is not questioned.

The plaintiff claims that all of the $9,600 paid on the mortgage in 1937 belonged to Mr. Schouten, and that its payment and the corresponding enlargement of the equity held in the mortgaged property by defendants Schouten as tenants by the entireties was a fraud in law on the bank of which plaintiff is the receiver. Plaintiff being dissatisfied with the amount of the lien decreed in the circuit court, and also dissatisfied because the lien decreed was made subordinate to a fixed interest of defendants Schouten, has appealed. Defendants Schouten claim that the payment of $9,600 on the mortgage was only the exercise of Mr. Schouten's right to prefer one creditor over another, that it was not a fraud in fact or in law, and since they took title to their property by the entireties long before plaintiff's claim accrued, the trial court erred in decreeing a lien thereon to plaintiff. They have also appealed.

Being insolvent at the time and indebted to the bank, in so far as Mr. Schouten invested or used his individual funds to pay the mortgaged debt on the entireties property and thereby placed or attempted to place his individual property beyond the reach of his creditors, the transaction constituted a fraud in law. Such payment cannot be held proper on the theory that Mr. Schouten was indebted to the mortgagee and had a right to pay that creditor in preference to others. Instead the payment on the mortgage debt was tantamount to an investment of Mr. Schouten's funds in property which he and his wife would hold as tenants by the entireties; and thus he would hinder and possibly prevent his creditors from reaching the funds invested by him. With a mere substitution of names the following applies to the instant case:

"But, * * * under the reasoning of the decision above quoted from, Alexander Wallace, while he was indebted to the plaintiff, had no right to tie up an additional sum * * * in an estate by the entirety and make no provision whatever for the payment of the few hundred dollars that he owed the bank, especially in view of the fact that by a simultaneous transaction he had disposed of all his personal property." *First State Bank of Milford* v. *Wallace,* 201 Mich. 673.

Regardless of intent, such investment or use of Mr. Schouten's individual funds was a fraud in law. *Newlove* v. *Callaghan,* 86 Mich. 297 (24 Am. St. Rep. 123); *Michigan Beef & Provision Co.* v. *Coll,* 116 Mich. 261; *Foster* v. *Whelpley,* 123 Mich. 350; *Caswell* v. *Pilkinton,* 138 Mich. 138; *First State Bank of Milford* v. *Wallace, supra; Lemerise* v. *Robinson,* 241 Mich. 528; *Jaffe* v. *Ackerman,* 279 Mich. 304.

We cannot accede to the contention that, since it resulted in paying *pro tanto* the mortgage obligation, Mr. Schouten's payment of $9,600 on the mortgage cannot be said to have been without "a fair equivalent therefor;" and that therefore under the statute (3 Comp. Laws 1929, §§ 13394, 13395 [Stat. Ann. §§ 26.883, 26.884]) the payment must be considered as one not "fraudulent as to creditors." What constitutes "a fair equivalent" or "a fair consideration" under the fraudulent conveyance act must be determined from the standpoint of creditors. The debtor might be satisfied to give his assets to a stranger or to exchange them for some worthless chattel. But the law will not permit him to do so if he thereby renders himself uncollectible to the detriment of his creditors. In general the test would seem to be whether the "conveyance" by the debtor, which "includes every payment of money" (3 Comp. Laws

1929, § 13392 [Stat. Ann. § 26.881]), renders the debtor execution proof. By his payment of $9,600 on the mortgage indebtedness, Mr. Schouten rendered himself to that extent less solvent, because prior thereto he had assets in his own right available to his creditors to the extent of $9,600, but after the payment on the mortgage covering property held by the entireties, not only was this amount of Schouten's assets placed beyond the reach of his creditors, but not even Schouten himself, without the consent of his wife, could apply this or an equivalent amount in satisfaction of his debts.   The additional interest which Mr. Schouten received in the entireties property by paying $9,600 of his money on the mortgage debt was not as to his creditors "a fair equivalent" or a "fair consideration" for the $9,600 of personal assets which he possessed prior thereto.   In effect what Mr. Schouten did amounted to an investment of $9,600 of his personal assets in property to which he and his wife held title by the entireties.   He was insolvent at the time and in law the transaction under the uniform fraudulent conveyance act was a fraud on his creditors.

The question is presented as to the amount in which plaintiff should be allowed a lien against the entireties property of the Schoutens.   All of the $9,600 constituting the six payments made on the mortgage during June and July, 1937, by Schouten came from the sale of securities in which he dealt as his individual property.   But at that time he was indebted to his wife in the amount of $1,496 which he designated as "a running credit on my books to her account."   He testified:

"I sold my own securities and then was under obligation to pay her, and instead of paying her, I paid the trust company. * * *

"*Q.* There wasn't any $1,496 of her securities which you sold and applied on the mortgage, was there?

"*A.* No.

"*Q.* I want to find out now, how much of her securities did you actually sell that went to make up that $1,496?

"*A.* That would be pretty hard to differentiate, because hers was a running account, a running credit to her. * * *

"The amount of $9,600 was paid on the $15,000 mortgage in June or July, 1937. That was partially from my own sources and partially from Mrs. Schouten. Mrs. Schouten and I have a joint account, and our funds have been commingled from time to time since about September, 1935. * * * On October 5, 1937, when the mortgage was paid, the exact amount of her contribution was $1,496, which was used to reduce the Michigan Trust Company mortgage. I handled the account for her, but she knew the use to which the funds were put. The balance of the various payments on the mortgage came from my own resources."

The witness was examined and cross-examined at length. He produced and there was received in evidence his record of the transactions between himself and his wife from September, 1935, to December, 1937. While the contents of this account are to some extent inconsistent with the claim that Mrs. Schouten was the true owner of $1,496 which was paid in 1937, on the mortgage covering the entireties property, the trial court found such to be the fact. No doubt the trial court may have been somewhat impressed with the verity of this claim, as we have been, since the amount claimed to have been Mrs. Schouten's individual money is only a comparatively small portion of the total of $9,600 paid on the mortgage. If these parties had been disposed to assert a dishonest

claim of this character, obviously it might as easily have been asserted as to a much larger sum. The account kept by Mr. Schouten tended in a substantial way to verify the claim; and under this record we would not be justified in disturbing the finding of the trial judge. It follows that the maximum amount of any lien which plaintiff might claim is limited to $8,104, and it must also be limited to the amount by which Mr. Schouten's unlawful use of his funds increased the equity in the entireties estate. This must be determined by considering the priority of the rights of the respective parties to this suit.

It is conceded that the trust company's $8,000 mortgage is a first lien. To the extent of $1,496 the payment on the $15,000 mortgage was without fraud as against plaintiff's rights. This payment was made with Mrs. Schouten's individual money. The Schoutens had a right to use her individual funds to reduce the $15,000 mortgage lien on the entireties property; and to that extent Mrs. Schouten may justly assert a right of subrogation to the lien theretofore held by the mortgagee. Thus her claim is prior to that of plaintiff. This item and the $8,000 mortgage total $9,496. The difference between this total and $15,000 is $5,504, which is the amount in which the Schoutens' equity in the entireties property was unjustly increased by Mr. Schouten's unlawful use of his individual funds. The transaction resulted in something akin to a trust *ex maleficio* by means of which both Mr. and Mrs. Schouten seek to benefit. This is inequitable and cannot be permitted. Instead it equitably follows that plaintiff to the extent of $5,504 is entitled to a lien upon the entireties property in which this amount was unjustly invested by Mr. Schouten. This results in the equity of the defendants Schouten in their entireties property being protected and it gives to plaintiff the full measure of

remedy to which it is entitled by reason of Mr. Schouten's application of his personal funds to the $15,000 mortgage lien in fraud of his creditors. Except to the extent above indicated plaintiff cannot rightfully assert a claim of lien against the entireties property of the Schoutens as a means of paying Mr. Schouten's individual obligations.

There is no occasion for specific determination of the homestead rights of the Schoutens in the property here involved. It is true that their homestead rights therein must be protected; but their homestead is embodied in their entireties property, and under the undisputed evidence their equity in the entireties property is in excess of $1,500, the maximum value of a homestead exemption. Constitution of 1908, art. 14, § 2.

In behalf of Mrs. Schouten it is contended that since there is no claim of actual fraud upon her part, her entireties estate cannot be disturbed by forced sale under foreclosure of plaintiff's lien. This contention is not tenable because, as above noted, so to hold would enable her to benefit by Mr. Schouten's wrongful use of his individual funds.

"It would be a gross injustice to permit debtors to apply moneys which should be applied to the payment of their debts to the creation of an estate which would be beyond the reach of their creditors. * * * In other words, estates in entirety cannot be created at the expense of creditors, and held in fraud of the latter's right." *Lemerise* v. *Robinson, supra.*

The decree entered in the circuit court gave the Schoutens an entireties estate to the value of $9,000 as an interest in the property prior to any lien therein to which plaintiff was decreed to be entitled. This $9,000 entireties interest was based upon the following facts. At the time the liability arose which plaintiff now seeks to enforce the entireties property was

subject to a $15,000 mortgage. The value of this property, according to the only testimony relative thereto, was $24,000. Hence the circuit judge reached the conclusion that the Schoutens' entireties interest in the property was of the value of $9,000, and on this theory he decreed that the Schoutens had a $9,000 interest in the entireties property which should be held prior to any lien decreed to plaintiff. We have stated hereinbefore our reasons for fixing plaintiff's right to a lien in the amount of $5,504, subject to specified priorities; and for the reasons there stated we think the circuit judge was in error in decreeing a further priority of $9,000 in the Schoutens.

In the brief of cross-appellants it is urged that the decree should give a lien on the premises to Mrs. Schouten in amount of $1,496 which lien should be made prior to all other liens except the Michigan Trust Company mortgage for $8,000. While other apparent reasons could be assigned which would necessitate denial of such affirmative relief to Mrs. Schouten, it is sufficient to note here that it will not be granted because in the pleadings she has asked for no affirmative relief.

There is no merit to appellant's contention that the trial judge was in error in decreeing dismissal of plaintiff's bill of complaint as against the Michigan Trust Company with costs to the latter. Plaintiff made the trust company a party defendant, subjected it to trial of the case, and was properly denied relief against it. It was entitled to its costs.

The case is remanded to the circuit court for entrance of a decree in accordance herewith and for further proceedings therein; such decree to provide that plaintiff's lien shall be paid together with interest thereon from the date of entering the decree within four months after the entry thereof, and in default plaintiff may sell the entireties property as

upon execution, subject, however, to the prior liens hereinbefore designated. Since neither appellant nor cross-appellants have fully sustained their respective contentions on this appeal, no costs will be awarded as between these parties; but costs of this Court are awarded to the Michigan Trust Company against appellant.

Bushnell, C. J., and Sharpe, Potter, Chandler, McAllister, Wiest, and Butzel, JJ., concurred.