### CASWELL *v.* PILKINTON.

FRAUDULENT CONVEYANCES — PAYMENT OF DEBTS—HUSBAND AND
WIFE.

The conveyance by a debtor of his interest in a decedent's
estate, to pay an antecedent debt created by the debtor and
his wife, who already had a homestead, for the purpose of
purchasing property, the title to which was not taken in the
debtor alone, but was taken in the name of himself and wife
as tenants by the entirety, was fraudulent as against other
creditors of the debtor.

Error to Ionia; Davis, J.    Submitted October 6, 1904.
(Docket No. 26.)    Decided November 9, 1904.

Attachment proceedings by Frank E. Caswell against
Silas H. Pilkinton.    There was judgment for defendant
on a verdict directed by the court, and plaintiff brings
error.    Reversed.

*R. A. & W. E. Hawley*, for appellant.

*Chaddock & Scully*, for appellee.

MOORE, C. J. This case was commenced by writ of attachment. The affidavit states that the plaintiff "has good reason to believe and does believe the defendant has assigned and disposed of a portion of his property with intent to defraud his creditors." Application was made to dissolve the attachment before the circuit court commissioner. An appeal was taken to the circuit court, a trial was had, and by direction of tho circuit judge a verdict was rendered in favor of the defendant, and the attachment was dissolved, The case is brought here by writ of error.

After the testimony on the part of the plaintiff was closed, defendant offered no evidence, by demurred to that offered on the part of plaintiff, thereby admitting it was true. The appellant insists that, if a verdict should have been directed at all, it should have been for the plaintiff, but, in any event, that the testimony disclosed a case which should have been submitted to a jury.

The plaintiff bases this claim upon testimony which tends to show the following: In 1889 the defendant failed. Prior to his failure he was indebted to Robert Dutton. In 1892, and for a time prior thereto, he owed Mr. Dutton approximately the sum of $2,000. The note involved in this case represents a portion of this indebtedness. It is dated June 15, 1895, and is for the sum of $311.89, payable one year after date. This note was indorsed over to the plaintiff on or about the 15th day of June, 1901. The plaintiff commenced this suit against him on the 14th day of January, 1902. On May 12, 1875, the defendant and his wife purchased two and one-fourth acres of land for the sum of $1,300, of which amount Mrs. Pilkinton furnished $1,160. This land was situated in the village of Portland, and constituted the homestead of the parties. The deed was taken in their joint names. On May 10, 1882, the defendant purchased village lots numbered 59 to 67, inclusive, in Bailey's Addition to the village of Portland, taking the title in his own name. On May 6, 1889, the defendant purchased from Maynard & Satterlee one-half

acre of land situated in the village of Portland, and took the title in his own name. On the 9th day of December, 1892, for a consideration expressed in the deed of $300, defendant and his wife conveyed said lots to his father, Stephen Pilkinton. At the same time defendant gave his father an assignment of his notes and accounts.

Plaintiff claims there was no actual consideration passed for these transfers, except that the father had signed a note at the bank for the use and benefit of defendant. Defendant claims that he also owed his father $900. The defendant retained the notes and accounts in his own hands, and paid up this note at the bank, all except the sum of $156, which is still unpaid. On the 15th day of October, 1897, Stephen Pilkinton, defendant's father, conveyed to defendant's wife the said lots 59 to 67, inclusive, and said half acre of land for an expressed consideration of $156, and, plaintiff claims, without any consideration whatever. On October 10, 1895, Charles H. Maynard and Orville S. Satterlee and wives conveyed to the defendant and his wife 10¼ acres of land situated in said village of Portland for an expressed consideration of $666.25. The defendant and his wife mortgaged this parcel, together with their homestead, to Charles H. Maynard, in the sum of $700. This money was used to pay for the 10¼ acres of land, and said mortgage remained unsatisfied and undischarged at the time of the trial. On May 29, 1902, defendant and his wife conveyed said 10¼ acres of land to their children for an expressed consideration of $1 and love and affection, reserving to the said grantors a life estate in said premises. The deed was made subject to the mortgage to Mr. Maynard.

Stephen Pilkinton died on the 30th day of September, 1900, leaving a will. Defendant would be entitled to about $650 from his father's estate. On November 5, 1900—four days after the will was admitted to probate—the defendant assigned all his interest in his father's estate to Charles H. Maynard to secure the payment of the balance due on the mortgage given Mr. Maynard on October 10,

1895, and on the same date the assignment was recorded. Plaintiff claims this was done without Mr. Maynard's knowledge. After the commencement of this suit, and before the trial, the wife of defendant died.

It is the claim of plaintiff that a fair inference from this state of facts is that defendant had conveyed a portion of his property with the intent to defraud his creditors.

It is the claim of defendant that plaintiff has failed ' wholly to make a case. He insists that defendant had a right to prefer his creditors, and that, as he owed Mr. Maynard, he might use what was coming to him from the estate of his father to pay that claim, and, as the one claim was equal to the other, the remaining creditors cannot complain. The trouble with this contention is that the debt paid was not simply the debt of the defendant, but it was a debt created by himself and wife when they already had a homestead, for the purpose of purchasing property the title to which was not taken in the husband alone, but was taken in the name of the husband and wife; and when the one-sixth interest which defendant had in his father's estate which might be reached by the creditors of defendant was used to pay the joint indebtedness of the husband and wife, and thereby cancel a lien on real property owned by them in the entirety, it brought about a result which gave the creditors of defendant a right to complain.

Defendant also claims (we quote from brief of counsel):

" Defendant, at the time he purchased the ten acres, had not one dollar's worth of property liable to execution. He was not creating an estate in the entirety at the expense of his creditors, and therefore the case of *Newlove* v. *Callaghan*, 86 Mich. 297, has no application to the facts in this case."

Undoubtedly, this was the situation when the 10 acres were purchased; but when, later, he used property which might be reached by creditors to extinguish a lien upon an estate in the entirety, it brought the case within the

principle announced in *Newlove* v. *Callaghan*, supra.
We think there was a case to be submitted to the jury.

Judgment is reversed, and a new trial ordered.

The other Justices concurred.