In re Russell ELKINS, Jr., Debtor.

James W. HOERNER, Trustee, Plaintiff,

v.

Russell ELKINS, Jr., Janet Elkins, and Edward Zaagman, Defendants.

In re Robert G. SUTTORP, Debtor.

T.M. BAEHLER, Trustee, Plaintiff,

v.

Robert G. SUTTORP, Barbara Suttorp, and Greentree Acceptance, Inc., Defendants.

Bankruptcy Nos. SG 87–01773, HG 87–01725.

Adv. Nos. 87–0539, 87–0538.

United States Bankruptcy Court, W.D. Michigan.

June 1, 1988.

Thomas C. Clinton, Varnum, Riddering, Schmidt and Howlett, Grand Rapids, Mich., for Trustees Hoerner and Baehler.

James R. Miller, American Bankruptcy Center, P.C., Grand Rapids, Mich., for defendants Elkins and Suttorp.

Harold Knoor, Grand Rapids, Mich., for Edward Zaagman.

James L. Moore, Traverse City, Mich., for Greentree Acceptance.

## OPINION

LAURENCE E. HOWARD and JO ANN C. STEVENSON, Bankruptcy Judges.

### CONVERSION OF NON–EXEMPT PROPERTY INTO TENANCY BY ENTIRETIES

The debtors in these cases present the court with the sole question of whether a Michigan debtor who, on the eve of bankruptcy, converts non-exempt property into property held by the entireties may exempt that entireties property from the bankruptcy estate when the Debtor elects the State of Michigan exemptions pursuant to 11 U.S.C. § 522(b)(2).

Defendants Russell Elkins, Jr., ("Elkins") and Robert Suttorp ("Suttorp") owned a parcel of commercial real estate as joint tenants. They sold this property for a profit of $30,000. As both were in financial difficulty, they consulted their attorney as to their options. Their attorney advised them to divide the money, invest it in entireties property with their spouses, and to then file petitions for relief under the

Bankruptcy Code. This they did. The Elkinses used their $15,000 as a down payment on real estate which they bought on land contract from defendant Edward Zaagman. The Suttorps used their $15,000 to pay down a mortgage held by defendant Greentree Acceptance, Inc. on entireties property the Suttorps owned. After the filing of the Chapter 7 petitions each Trustee filed an adversary proceeding seeking to avoid the corresponding transfer under the Michigan Fraudulent Conveyance Act, M.S.A. §§ 26.881 to 26.893 [M.C.L.A. §§ 566.11 to 566.23], on the grounds that the Debtor made the transfer while insolvent and that the transfer therefore constituted fraud.

Shortly before the trial dates set in these adversary proceedings, the Trustees filed motions for summary judgment. Although the Court never issued formal orders denying these motions, the Court notified the parties by letter that it considered insolvency a genuine issue of material fact that would preclude summary judgment unless the parties could stipulate as to whether the Debtors were insolvent. The parties were unable to agree as to insolvency. Therefore, on April 4, 1988, Judge Howard heard the issue of insolvency as to Mr. Suttorp; Judge Stevenson held a hearing on the insolvency of Mr. Elkins on April 6, 1988. At the conclusion of each hearing, the Court held that the respective Debtors were insolvent at the time they made the transfers in question. Therefore, the Court may proceed to the legal question of the extent of the Michigan entireties exemption.

Both Debtors have sought to exempt their entireties property under § 522(b)(2)(B), which provides that the debtors may exempt, *inter alia,*

any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt

from process under applicable nonbankruptcy law.

The Debtors also rely upon the legislative history accompanying § 522, which provides in part that:

As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.

S.Rep. No. 989, 95th Cong., 2d Sess. 75–76, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5862. The Debtors also cite cases from other jurisdictions in which courts found identical conduct did not constitute a fraudulent transfer.

We do not believe that § 522(b)(2)(B), the legislative history, nor these cases compel us to allow these exemptions.

Section 522(b)(2)(B) specifically provides that a tenancy by the entirety is exempt only to the extent it is "exempt from process under applicable nonbankruptcy law." Section 522 has been interpreted to mean that the "Code requires that, when the debtor claims a state-created exemption, the scope of the claim is determined by state law." *First Texas Savings Association, Inc., v. Reed (In re Reed),* 700 F.2d 986, 991 (5th Cir.1983). A passage in the legislative history which purports to alter the substantive content or scope of state law does not prevail over express language in the Code directing the Court to State law with no modification.[1] As this court has stated in a slightly different context, "in the absence of ambiguity, the statute must speak for itself." *In re Rossman,* 70 B.R. 985, 994 (Bankr.W.D. Mich.1987).

The Debtors have cited five cases for the proposition that their actions do not constitute fraud. However, three of these cases actually reinforce the proposition that the extent of the entirety exemption under § 522(b)(2)(B) must be determined with ref-

---

1. Nor do we believe that this passage of the legislative history was intended to create a substantive change in the scope or content of state law. Rather, we think that the meaning of this passage is to make it clear that then current law was to continue unchanged.

erence to State law. *In re Olson*, 45 B.R. 501 (Bankr.D.Minn.1984); *Cristol v. Blum (In re Blum)*, 41 B.R. 816 (Bankr.S.D.Fla. 1984); and *Judson v. Levine (In re Levine)*, 40 B.R. 76 (Bankr.S.D.Fla.1984). Each of these cases recognizes that the laws of the respective states control the scope of state created exemptions. Granted, the other two cases cited by the defendants, *Thorp Credit Inc. of Ohio v. Saunders (In re Saunders)*, 37 B.R. 766 (Bankr. N.D. Ohio 1984), and *In re James*, 31 B.R. 67 (Bankr.D.S.D.1983), do appear to assume that federal, not state law, controls. However, it is just that, an assumption. Neither case addresses this question, nor justifies its choice of federal law. We must reject these last two cases as contrary to the Code and well reasoned caselaw cited above.

Since the Debtors may exempt their tenancy by the entirety property only to the extent it is "exempt from process under applicable nonbankruptcy law," we must turn to Michigan law to determine exactly what that is. In *Newlove v. Callaghan*, 86 Mich. 297, 48 N.W. 1096 (1891), the Michigan Supreme Court considered the case of a judgment debtor who, together with his wife, paid $1,850 to purchase land as a tenancy by the entirety. The judgment creditor attempted to levy on that real estate. The Michigan Supreme Court held that the creditor was entitled to the husband's share in the parcel, explaining that:

> It would be a gross injustice to permit debtors to apply moneys which should be applied to the payment of their debts to the creation of an estate which would be beyond the reach of their creditors. Had the entire estate been placed in the wife's name, there could have been no question but that the same would be regarded as fraudulent under the statute, and it is no less a fraud upon creditors because the title has been taken in the name of the defendants jointly. In other words, estates in entirety cannot be created at the expense of creditors, and held in fraud of the latter's right.

86 Mich. at 300–301, 48 N.W. at 1097. The Court relied on this reasoning in *Caswell v. Pilkinton*, 138 Mich. 138, 101 N.W. 212

(1904) wherein the debtor and his wife owned a parcel of land as tenants by the entirety which was subject to a mortgage. The creditor alleged that when the debtor's father died, the debtor used his inheritance to pay off the joint mortgage. The trial court entered a directed verdict for the debtor defendant. The Michigan Supreme Court reversed, holding that these allegations raised a claim which should have been submitted to the jury, based on *Newlove*. 138 Mich. at 141–142, 101 N.W. at 213.

Although of antique origin, this doctrine is not forgotten in Michigan. In *McCaslin v. Schouten*, 294 Mich. 180, 292 N.W. 696 (1940), plaintiff sued upon a debt owed by defendant. Shortly before entry of judgment, the defendant sold securities he owned and used the proceeds to pay down an antecedent mortgage on property owned by defendant and his wife as tenants by the entirety. The Michigan Supreme Court held that:

> Being insolvent at the time and indebted to the bank, in so far as Mr. Schouten invested or used his individual funds to pay the mortgaged debt on the entireties property and thereby placed or attempted to place his individual property beyond the reach of his creditors, the transaction constituted a fraud in law.

294 Mich. at 185, 292 N.W. at 699. The Court went on to reiterate that, "[r]egardless of intent, such investment or use of Mr. Schouten's individual funds was a fraud in law." 294 Mich. at 186, 292 N.W. at 699. The Court directed that the plaintiff should be granted a lien upon the real estate in the same amount as that paid upon the mortgage by the husband.

*Dunn v. Minnema*, 323 Mich. 687, 36 N.W.2d 182 (1949), presented the Court with an almost identical situation as faced in *McCaslin*. The only differences were that *Dunn v. Minnema* involved a land contract instead of a mortgage, and the source of the funds was the debtor-husband's solely held savings account and savings bonds. In reliance upon the Michigan cases cited above and others, the Court held for the plaintiff creditor, writing that:

It is undisputed, however, that at the time he [defendant-debtor] made the payments in question in this proceeding he was insolvent as a result of the judgment standing against him. The transaction must be considered with reference to the effect on the rights of the creditor. Notwithstanding the purpose for which the payments were made, they, in legal effect, constituted an investment in property ostensibly beyond the reach of creditors. Without reference to actual intent, the result was a constructive fraud against which relief may be granted.

323 Mich. at 692, 36 N.W.2d at 184. The Court then granted the plaintiff a lien in the subject real estate in the amount of the transfer.

Taking the above facts and summary of Michigan law, it is clear that the transfers in question here were made while the Debtors were insolvent and had the effect of putting the proceeds of the commercial real estate beyond the reach of their creditors. The transfers were therefore fraudulent under Michigan law. From this it follows that these transfers would not be exempt from process under Michigan law, and accordingly, would not be exempt under § 522(b)(2)(B). Moreover, it makes no difference what the debtors intended in making these transfers, or whether the payments were made on a mortgage or a land contract, nor upon an antecedent debt as opposed to a newly incurred debt.

The trustee in both actions may avoid both transfers as to the debtors.[2]

---

**2.** These proceedings were divided into phases with the consent of all parties. Since the remaining defendants, Edward Zaagman and Greentree Acceptance, were omitted from this phase with the consent of all parties, this opinion has no effect on their rights other than to determine that when the transfers in question were made, the debtors were insolvent.