In re Frank LOPEZ, Debtor.

Frank Lopez, Appellant–Defendant,

v.

Sandra Donaldson, Appellee–Plaintiff.

No. 02–10083–BC.

United States District Court,
E.D. Michigan,
Northern Division.

April 8, 2003.

John L. Wildeboer, Wildeboer & Klida, LLP, Bay City, MI, for appellant.

Barbara A. Klimaszewski, Klimaszewski & Street, Saginaw, MI, for appellee.

### OPINION AND ORDER VACATING ORDER OF BANKRUPTCY COURT

LAWSON, District Judge.

The debtor, Frank Lopez, appeals from the order of the bankruptcy court extending a summons and allowing Sandra Donaldson, the plaintiff in an adversary proceeding contesting the dischargeability of a debt, additional time to effectuate service of her complaint. The bankruptcy judge held that a showing of good cause is not required by Federal Rule of Civil Procedure 4(m) and Federal Rule of Bankruptcy Procedure 7004 to extend Rule 4(m)'s 120–day deadline for service and that circumstances favored the extension. This Court agrees that a plaintiff need not demonstrate good cause under the rules, but finds that the lower court abused its discretion by not properly evaluating the potential prejudice to the debtor that could result from the extension. The Court, therefore, will vacate the order of the bankruptcy court extending the service deadline and remand for further proceedings.

### I.

On May 4, 2001, Frank Lopez filed for relief under Chapter 7 of the Bankruptcy Code. The Notice of Chapter 7 Bankruptcy Case, filed May 14, 2001, set a meeting of creditors for June 5, 2001 at 1:30 p.m. and established the deadline to file a complaint objecting to the discharge of the debtor as August 6, 2001.

On August 6, 2001, the appellee-plaintiff, Sandra Donaldson, timely filed a complaint through counsel seeking to determine the dischargeability of a debt consisting of her claim that Lopez abused a therapist relationship with her, resulting in the intentional infliction of emotional distress. The complaint and jury demand initially raising this claim had been filed in Saginaw County Circuit Court on January 21, 1997, and those proceedings were stayed upon the debtor's bankruptcy filing. A summons notifying Lopez of the lawsuit was also issued on August 6, 2001.

However, Donaldson did not serve Lopez with the complaint and then-expired summons until November 13, 2001. Meanwhile, on August 9, 2001, three days after

the summons was issued, the bankruptcy judge granted Lopez a discharge of his scheduled debts. The Discharge Order contains the standard language excluding from discharge those debts for which the debtor had entered into a reaffirmation agreement. Lopez alleges, without contradiction by Donaldson, that he signed reaffirmation agreements in compliance with the Bankruptcy Code with Citizens Bank and Security Federal Credit Union.

Lopez moved for summary judgment on the basis of improper service on December 6, 2001, within the time allotted for responding to the complaint. He contended that service of an expired summons is invalid service, and that he was prejudiced by the plaintiff's delay in service because he had changed his circumstances in reliance on the bankruptcy discharge. Donaldson responded to the motion by stating that her failure to timely serve Lopez was the result of "a combination of counsel's unfamiliarity with this court and counsel's health problems," and requested the court to extend the summons and the time for service. On March 20, 2002, the bankruptcy judge issued an "Opinion Regarding Defendant's Motion for Summary Judgment" in which he found that although service was not timely, the plaintiff was not required to show good cause to receive an extension of time to effect service. *In re Lopez,* 274 B.R. 717, 718–19 (Bankr. E.D.Mich.2002). The bankruptcy judge reasoned that a determination of whether good cause existed was unnecessary because the balance of interests favored permitting additional time for service. *Id.* at 719. He noted that the plaintiff's action would be time-barred if an extension of time were not granted, but that the defendant had actual notice of the adversary proceeding within 120 days of the summons' issuance and that the additional delay would seem to have had no effect on

Lopez's ability to defend himself. *Id.* at 719–20.

This interlocutory appeal followed. The Court granted leave to appeal in an order filed May 29, 2002. The appeal was delayed because debtor's counsel neglected to timely file his brief in accordance with the Court's briefing schedule, and he was fined. Donaldson promptly filed her appellee's brief. No reply brief was filed. Oral argument was heard on April 3, 2003.

## II.

■ The district court will not disturb factual findings made by a bankruptcy judge in an adversary proceeding unless they are clearly erroneous, and the appellant can demonstrate "the most cogent evidence of mistake of justice." *In re Baker & Getty Fin. Servs.,* 106 F.3d 1255, 1259 (6th Cir.1997). Conclusions of law are reviewed *de novo. In re Zaptocky,* 250 F.3d 1020, 1023 (6th Cir.2001). The lower court's decision to grant an extension of time for service is reviewed for abuse of discretion. *Byrd v. Stone,* 94 F.3d 217, 219 (6th Cir.1996). The lower court "abuses its discretion when it applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Miami Univ. Wrestling Club v. Miami Univ.,* 302 F.3d 608, 613 (6th Cir.2002).

### A.

■ The debtor claims here that the plaintiff was required to demonstrate good cause to obtain an extension of the summons and the time for service, and that the bankruptcy court's ruling to the contrary was erroneous. The debtor points to several cases decided by the United States Court of Appeals for the Sixth Circuit, discussed below, that appear to condition such extensions on a showing of good cause. At oral argument, however, the

debtor's counsel agreed that there are no Sixth Circuit decisions interpreting the post–1993 version of Federal Rule of Civil Procedure 4 that ordain such a rule, and that statements to that effect in opinions are confined to *obiter dicta.* This Court is convinced that the bankruptcy court was correct in holding that Rule 4(m) does not mandate a showing of good cause as a prerequisite for the court's exercise of discretion to extend time for service of a summons and complaint.

Former Federal Rule of Civil Procedure 4(j) provided, in relevant part:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Fed.R.Civ.P. 4(j) (1984) *quoted in United States v. Gluklick,* 801 F.2d 834, 837 (6th Cir.1986). In 1993, however, the text of subsection (j) was amended and relocated to subsection (m):

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant *or direct that service be effected within a specified time;* provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m) (1994) (emphasis added).

The consensus of authority views this Rule as mandating an extension if good cause is demonstrated. *See, e.g., Petrucelli v. Bohringer & Ratzinger,* 46 F.3d 1298, 1307–08 (3d Cir.1995); *Panaras v. Liquid Carbonic Indus. Corp.,* 94 F.3d 338, 340 (7th Cir.1996) (finding that "where good cause is shown, the court has no choice but to extend the time for service"); *De Tie v. Orange County,* 152 F.3d 1109, 1111–12, 1112 & n. 5 (9th Cir.1998). The new language, however, also confers discretion upon the trial court to enlarge the 120–day period for service "even if there is no good cause shown." *Henderson v. United States,* 517 U.S. 654, 658 n. 5, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996); *Moore's Federal Practice* § 4.82[1], at 4–89 to 4–90 (rev. June 2002). In other words, even in the absence of good cause, the court *may* grant an extension of time for service, but if good cause is shown, the court *must* extend. The Advisory Notes to the 1993 revisions suggest that, when exercising discretion, the court should consider the prejudice that would inure to the parties from either decision, with the preclusion of the plaintiff's ability to bring suit almost always favoring the enlargement of time for service.

The Sixth Circuit has not yet joined this consensus. Three published opinions following the adoption of Rule 4(m) address the good cause requirement. In *Habib v. General Motors Corp.,* 15 F.3d 72 (6th Cir.1994), the court found good cause under Rule 4(m)'s predecessor, Rule 4(j), and never reached the question of whether Rule 4(m) had materially changed the requirements for securing an enlargement of time for service of the complaint. In *Byrd v. Stone,* 94 F.3d 217 (6th Cir.1996), the court again found good cause, concluding there that it "need not decide whether prior Rule 4(j) or current Rule 4(m) governs the facts in this case because, under either version, an extension is warranted if plaintiff can show good cause." *Id.* at 219

n. 3. However, *Byrd* also stated categorically in *dicta* that "[a]bsent a showing of good cause to justify a failure to effect timely service, the Federal Rules of Civil Procedure compel dismissal." *Id.* at 219. *See also Catz v. Chalker,* 142 F.3d 279, 289 n. 10 (6th Cir.1998) (reversing district court's *sua sponte* dismissal of complaint, but noting in passing that good cause was necessary to secure an enlargement of time for service). The debtor relies on these decisions as his sole authority for the argument that an extension under Rule 4(m) cannot be granted absent good cause.

District courts in this Circuit do not share that view, and the decisions have consistently rejected the notion that *Byrd* and *Habib* compel the continued application of a "good cause" requirement to enlarge the time for service. *See Wise v. Dept. of Defense,* 196 F.R.D. 52 (S.D.Ohio 1999); *Vergis v. Grand Victoria Casino & Resort,* 199 F.R.D. 216 (S.D.Ohio 2000); *Slenzka v. Landstar Ranger, Inc.,* 204 F.R.D. 322 (E.D.Mich.2001) (following *Wise*). In *Vergis,* the employee failed to timely serve his employer, the owner of a riverboat casino, within the 120 days required by Rule 4(m). The Court found that the absence of good cause excusing the failure to make timely service did not preclude an enlargement of time for that purpose. The Court cited the 1993 Advisory Notes to Rule 4(m), which plainly indicate that Rule 4(m) "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown." 199 F.R.D. at 217. The Court also observed that other circuit courts of appeals had consistently relied on this Advisory Note to hold that good cause was no longer required, acknowledging that although the Fourth Circuit had rejected an attempt to loosen the good cause requirement (referring to *Mendez v. Elliot,* 45 F.3d 75, 78–79 (4th Cir.1995)), its decision also did not discuss the Advisory Note to the Rule. *Id.* The *Vergis* Court recognized that the Supreme Court, albeit in *dicta,* had made clear that Rule 4(m) no longer imposed a good cause requirement (citing *Henderson,* 517 U.S. at 662–63, 116 S.Ct. 1638), and observed that the Sixth Circuit generally considers Supreme Court *dicta* highly persuasive. *Id.* at 217–18 (citing *Wright v. Morris,* 111 F.3d 414, 419 (6th Cir.1997)). Thus, despite no good cause shown, the *Vergis* Court concluded that enlargement would be appropriate, as (1) dismissal would bar the plaintiff's suit under the statute of limitations; (2) the defendant had actual notice of the suit prior to the 120 day period; and (3) "granting Plaintiff an extension of time . . . would be in keeping with the overall policy in this Circuit of resolving disputes on their merits, rather than disposing of them on procedural or technical grounds." *Id.* at 218.

The *Wise* court reached the same conclusion regarding Rule 4(m) using very similar analysis which include a rejection of both *Byrd*'s statement that good cause was mandatory to grant enlargement and the Sixth Circuit's rote reiteration of that language in *Catz.* In neither case, *Wise* noted, did the court's decision rest on the plaintiff's failure to demonstrate good cause after failing to serve the defendant within 120 days, and thus language advancing a good cause requirement was *dictum* that did not bind the district courts of this Circuit.

The reasoning of these cases draws it essence from the language of Rule 4(m) itself, and is confirmed by statements in the 1993 Advisory Notes. The Court believes the decisions are correct, and holds that when an applicant for an extension of the 120–day limit for service of a summons and complaint fails to demonstrate good cause, Rule 4(m) nonetheless allows the

court to exercise its discretion and grant an extension in appropriate cases.

### B.

■ Lopez, the debtor, argues, however, that this was not an appropriate case in which to grant an extension, and that the bankruptcy court did not properly balance the pertinent factors. In *Slenzka v. Landstar Ranger, Inc.*, the district court identified several factors that might inform the court's discretion, including whether:

(1) a significant extension of time was required; (2) an extension of time would prejudice the defendant other than the inherent "prejudice" in having to defend the suit; (3) the defendant had actual notice of the lawsuit; (4) a dismissal without prejudice would substantially prejudice the plaintiff; i.e., would his lawsuit be time-barred; and (5) the plaintiff had made any good faith efforts at effecting proper service of process.

*Slenzka*, 204 F.R.D. at 326. It is also appropriate to consider the effect an extension would have on the administration of justice, and whether an extension would undermine any policy considerations explicitly or implicitly contained in the procedural rules urging the prompt disposition of the particular type of matter.

Since the adversary proceeding arose under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure govern. Bankruptcy Rule 7004(a) imports Federal Rule of Civil Procedure 4(m), which includes the 120-day time limit for service of process. But Rule 7004(e) shortens the life of a summons to ten days, indicating a preference for prompt notification in contested cases. The Rule permits the issuance of a new summons when the old one expires, but it also thereby provides the court a means of monitoring those cases where service of process is delayed. Except where service of process is hindered or complicated, the use of all or most of the 120 days allowed by Rule 4(m) to serve process in a bankruptcy adversary proceeding should be a rare occurrence.

■ The bankruptcy court did not consider the effect of the delay in service on the administration of this action. It confined its view to whether the plaintiff's action would be time-barred if the extension were denied, and whether granting the extension would inhibit the ability of the defendant-debtor, who had actual notice of the action about twenty days before the Rule 4(m) deadline expired, to defend the action. *In re Lopez*, 274 B.R. at 719–20. Although consideration of these factors is certainly appropriate, it projects too narrow a view, especially on the question of prejudice to the debtor.

According to Lopez, the debt caused by the potential liability to Ms. Donaldson was the major impetus propelling him into bankruptcy. He asserts that he may have abandoned the case if that debt were determined to be nondischargeable. The delay in service of the adversary proceeding, he says, foreclosed that option.

■ Moreover, the outcome of the adversary proceeding is not altogether clear. Donaldson alleges that Lopez's potential liability to her would be nondischargeable because it was the result of a willful, malicious injury. It is true that debts arising from an injury that was "willful and malicious" are not dischargeable under Chapter 7 of the Bankruptcy Code. *In re Markowitz*, 190 F.3d 455, 463 (6th Cir.1999) (citing 11 U.S.C. § 523(a)(6)); *In re Caldwell*, 895 F.2d 1123, 1126 (6th Cir.1990) (noting that "willful and malicious" injury debts can be discharged under Chapter 13, but not Chapter 7). But an injury is willfully and maliciously caused only if "the actor desires to cause consequences of his act, or ... believes that the consequences

are substantially certain to result from it." *Markowitz*, 190 F.3d at 464 (quoting *Restatement (Second) of Torts* § 8A, at 15 (1964)). It is not enough that an act itself done intentionally proceeded to cause injury to another. *In re Kennedy*, 249 F.3d 576, 581 (6th Cir.2001). Intentional infliction of emotional distress has been recognized as the type of "willful and malicious" conduct likely to be nondischargeable in a Chapter 7 bankruptcy proceeding. *In re Cunningham*, 59 B.R. 743, 746 (Bankr. N.D.Ill.1986). However, in Michigan, this tort encompasses both intentional and reckless conduct. *See, e.g., Moore v. City of Detroit*, 252 Mich.App. 384, 389, 652 N.W.2d 688, 691 (2002) (holding that the tort requires proof of either "intent or recklessness"). "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Kawaauhau v. Geiger*, 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (holding that medical malpractice claims are dischargeable under Chapter 7). Thus, to the extent that a defendant may only have been found guilty of reckless infliction of emotional distress, the debt arising from such a damage award could still be discharged. *In re Hill*, 265 B.R. 270, 276–77 (Bankr.M.D.Fla.2001) (refusing to give preclusive effect to state-court judgment on claim of intentional infliction of emotional distress where mental state of recklessness was sufficient for liability).

 In addition, this case also involves two reaffirmation agreements signed by Lopez prior to the discharge of his remaining debts. A reaffirmation agreement is the only way that a dischargeable debt can survive a Chapter 7 discharge. *In re Turner*, 156 F.3d 713, 715 (7th Cir.1998). Because the notion of reaffirmation is arguably contrary to the entire purpose of Chapter 7 bankruptcy, and can very well undermine the fresh start that Chapter 7

is intended to provide, such agreements are strictly regulated by the Bankruptcy Code. Among other things, the agreement must be filed with the court; it must contain a "clear and conspicuous statement" that the debtor may rescind the offer up to sixty days after its execution or anytime before discharge, whichever occurs later; it must not impose undue hardship upon the debtor or his dependents; and, if the debtor proceeds *pro se*, the court must undertake a colloquy with the debtor in open court to ensure that the debtor is making a voluntary and knowledgeable decision. *See* 11 U.S.C. § 524(c).

 It is unclear whether, under the Bankruptcy Code, a debtor may petition to set aside an otherwise valid reaffirmation agreement once the discharge has been entered. The general rule is that once the time periods provided in Section 524(c) for rescission have elapsed, the reaffirmation agreement cannot be disavowed. *In re Grabinski*, 150 B.R. 427, 430–31 (Bankr. N.D.Ill.1993) (holding that once the sixty-day period stated in Section 524(c) has passed and other debts have been discharged, the debtor should not be able to attack a reaffirmation agreement); *In re Saunders*, 169 B.R. 192, 195 (Bankr. W.D.Mo.1994) (citing *Grabinski*); *In re Ripple*, 242 B.R. 60, 64–65 (Bankr. M.D.Fla.1999); *In re McCreless*, 141 B.R. 223, 224 (Bankr.N.D.Fla.1992) ("Nowhere does the Code give the Court the authority to set aside a reaffirmation agreement after the time for rescission has passed."). A contrary rule would compromise the rights of creditors, who likely have relied on the reaffirmation agreement in structuring their own finances. *Grabinski*, 150 B.R. at 431.

Rule 9024 does preserve a party's right to move for relief in accordance with Federal Rule of Civil Procedure 60, and even removes the one-year limitation period

Rule 60 places upon such motions in ordinary civil actions. *See* Fed. R. Bankr.P. 9024. Nonetheless, it is unclear whether the facts of this case would meet the criteria under Rule 60, or even whether relief under Rule 60 is ever appropriate when Section 524 of the Bankruptcy Code has already provided explicit time limits. *Compare In re Tuan Tan Dinh,* 90 B.R. 743, 745–46 (Bankr.E.D.Pa.1988) (finding that Rule 60 could be invoked to enforce valid reaffirmation agreement where balance of prejudice favored the debtor and the original oversight was not the fault of the debtor, but the creditor) *and In re Edwards,* 236 B.R. 124, 127–28 (Bankr. D.N.H.1999) (adopting approach of *Tuan Tan Dinh* ) *with In re Markovich,* 207 B.R. 909, 913 (9th Cir. BAP 1997) (characterizing such holdings as "the minority view" and holding that, under Supreme Court precedent, bankruptcy courts' equitable powers are limited to the provisions of the Bankruptcy Code) *and In re Rigal,* 254 B.R. 145, 147–48 (Bankr.S.D.Tex.2000) (questioning whether Rule 60 "is applicable" to requests to vacate discharges due to desire to enter reaffirmation agreements, given the specific provisions of Section 524 and other Bankruptcy Code provisions with regard to time limits).

 None of these factors were considered by the bankruptcy court, although they were urged upon it by the debtor, perhaps with a lesser degree of specificity. The evaluation of the prejudice to the defendant that allowance of an extension might cause must include more than accounting for the impact the extension may have on his ability to defend the action. Rather, the court must evaluate the totality of the circumstances in the context of the bankruptcy proceeding, including the effect the extension might have on the administration of the entire matter. Omitting pertinent factors from consideration results in the application of an incorrect legal standard, which in turn constitutes an abuse of discretion. *See Miami Univ. Wrestling Club,* 302 F.3d at 613 (noting that the lower court abuses its discretion when it "misapplies the correct legal standard" or "relies on clearly erroneous findings of fact").

### III.

Donaldson contended in the bankruptcy court that she had demonstrated good cause for the late service of the summons and complaint. The bankruptcy court, however, "bypass[ed] the 'good-cause' issue altogether," and proceeded to grant relief under its discretionary authority. *See In re Lopez,* 274 B.R. at 719. On remand, the plaintiff is free to pursue this argument, on which this Court expresses no opinion. The Court does find, however, that the lower court abused its discretion in granting the extension in this case because it failed to evaluate properly the question of prejudice to the debtor. On remand, if the bankruptcy court finds good cause, it shall grant the extension. Fed. R.Civ.P. 4(m). If it finds no good cause, the court shall exercise its discretionary authority by considering the appropriate factors.

Accordingly, it is **ORDERED** that order of the bankruptcy court extending the filing deadline for the summons and complaint in the adversary proceeding is **VACATED** and the matter is **REMANDED** for further proceedings.