**In the Matter of Edwin HARLIN, Debtor.**

**Wendy Turner Lewis, Trustee, Plaintiff–Appellant,**

v.

**Janice D. Harlin, Defendant–Appellant.**

**No. 04–73358.**

United States District Court, E.D. Michigan, Southern Division.

Feb. 3, 2005.

Timothy J. Miller, Schneider, Miller, Detroit, MI, for Appellant.

Martin L. Fried, Goldstein, Bershad, Southfield, MI, for Appellee.

### MEMORANDUM AND ORDER

COHN, District Judge.

#### I. Introduction

This is a bankruptcy appeal in a Chapter 7 case. The Trustee, Wendy Turner Lewis, appeals from the decision of the Bankruptcy Court denying her motion for summary judgment and granting defendant's, Janice D. Harlin (Harlin), motion to dismiss the Trustee's adversary complaint. The issue on appeal is whether the debtor Edwin Harlin's lump sum payment of a mortgage on a home owned by the debtor and Harlin, his wife, under the circumstances described below constitutes a fraudulent conveyance under Michigan law. The Court finds that it does and therefore REVERSES the decision of the Bankruptcy Court and REMANDS this case for further proceedings consistent with this Memorandum and Order.

#### II. Background

The relevant facts are straightforward and undisputed. On April 9, 2001, the debtor received $497,000.00 in settlement of a wrongful discharge claim against a prior employer. The debtor used a portion of the settlement proceeds, approximately $200,000.00, to pay income taxes. On April 11, 2001, the debtor also used $146,861.15 to retire the mortgage debt on the home which he jointly owned with his wife as tenancies by the entirety.

Over two years later, on August 28, 2003, the debtor filed a voluntary Chapter 7 petition. The petition described a residence in Troy, Michigan with a value of $350,000.00. The debtor disclosed liabilities of $3,779,448.00.

The debtor admits that he was insolvent at the time the mortgage debt was satisfied.

The Trustee filed an adversary proceeding against Harlin, seeking to avoid the transfer of $146,861.15 as a fraudulent conveyance and for a judgment allowing a sale of the home. The Trustee claimed (1) intentional fraud and (2) constructive fraud.

The Trustee filed a motion for summary judgment on both counts.

Harlin filed a motion to dismiss the adversary complaint.

The Bankruptcy Court held a hearing at which it denied the Trustee's motion and granted Harlin's motion essentially on the grounds that the payment at issue was not a fraudulent conveyance under Michigan law.[1]

The Trustee appeals, arguing that its complaint should not have been dismissed. She also argues that it is entitled to summary judgment on both of her claims of actual fraud and constructive fraud. Alternatively, the Trustee says she made at least a prima facie showing under each claim and/or that there are genuine issues of material fact precluding the dismissal of its claims.

### III.  Standard of Review

This Court reviews factual findings made by a bankruptcy judge for clear error, which requires the appellant demonstrate "the most cogent evidence of mistake of justice." *In re Baker & Getty Fin. Servs.*, 106 F.3d 1255, 1259 (6th Cir.1997).

Conclusions of law are reviewed de novo. *In re Zaptocky*, 250 F.3d 1020, 1023 (6th Cir.2001). *See In re Lopez*, 292 B.R. 570, 573 (E.D.Mich.2003).

### IV.  Analysis

#### A.  The Trustee's Complaint

■ The Trustee claimed both actual fraud and constructive fraud under Michigan's Uniform Fraudulent Transfer Act, M.C.L. 566.31 *et seq.*[2] In count I, The Trustee claims that the debtor's payment of the mortgage was an actual fraudulent conveyance because at the time of the payment the debtor had several creditors and paid off the mortgage debt with the intent to hinder, delay, or defraud either existing or future creditors. In count II, the Trustee claims that the payment of the mortgage debt amounts to a constructive fraudulent conveyance as between the debtor and Harlin and that the debtor did not receive reasonably equivalent value from Harlin for the benefits she received— an enhanced value to the estate.

#### B.  Count II—Constructive Fraud

##### 1.  The Statute

Section 566.35 deals provides:

Sec. 5.  (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent

---

**1.** The Bankruptcy Court's reasons for its ruling are reflected in the transcript of the hearing.

**2.** The Bankruptcy Code also has a provision for voiding fraudulent conveyances. 11 U.S.C. § 548(a)(2) allows the trustee to avoid a transfer of property made within *one year* before the filing date. Because the alleged fraudulent transfer in this case was made well over a year before the debtor filed for bankruptcy, this section does not apply. However, section 544 of the Bankruptcy Code permits a trustee to exercise any rights of a creditor under state law, including those relating to fraudulent conveyances. *See* 11 U.S.C. § 544.

at that time or the debtor became insolvent as a result of the transfer or obligation.

(2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

M.C.L. § 566.35.

### 2. The Bankruptcy Court's Decision

In holding that the Trustee failed to make out a claim for constructive fraud. The Bankruptcy Court distinguished the authority upon which the Trustee relied, *Glazer v. Beer*, 343 Mich. 495, 72 N.W.2d 141 (1955) and *In re Greenfield*, 249 B.R. 856 (Bankr.E.D.Mich.2000), and noted the absence of a case finding that the payment of a mortgage under the circumstances here amounts to a fraudulent conveyance. The Bankruptcy Court also found persuasive policy considerations in finding that payment of a mortgage debt could not be viewed as a fraudulent conveyance.

### 3. Parties' Arguments on Appeal

The Trustee argues that Michigan courts have consistently held that where a mortgage or other encumbrance against real property held as tenancies by the entireties is paid by an insolvent debtor, that payment is fraudulent as to creditors and that the Bankruptcy Court erred in distinguishing *Glazer* and *In re Greenfield*. The Trustee also argues that the Bankruptcy Court improperly relied on case law from other jurisdictions. Finally, the Trustee argues that to the extent the Bankruptcy Court's decision can be interpreted as requiring a showing of the "badges of fraud," such a finding is erroneous because that is not necessary to a finding of constructive fraud.

Harlin argues that the cases on which the Trustee relies are no longer good law because they were decided under Michigan's Fraudulent Conveyance Act, which has been superceded by Michigan's Fraudulent Transfer Act. Finally, Harlin argues that case law from other jurisdictions declining to find similar payments amount to fraudulent conveyances is persuasive. Harlin further argues that policy considerations under the Bankruptcy Code supercede any state policy in terms of allowing a debtor to use non-exempt assets to acquire exempt assets.

### 4. Discussion

■ Harlin's argument that Michigan's adoption of the Uniform Fraudulent Transfer Act (MFTA) fundamentally altered the nature of a constructive fraudulent transfer from the prior Uniform Fraudulent Conveyance Act (MFCA) is not well-taken. The MFCA defined a constructive fraudulent transfer as follows:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

M.C.L. § 566.14 (repealed). "Fair consideration" was defined as follows: "when in exchange for such property, or obligation, as a fair equivalent value therefore, and in good faith, property is conveyed or antecedent debt is satisfied." M.C.L. § 566.13 (repealed).

■ In terms of a constructive fraudulent transfer, the MFTA replaces "fair consideration" with "reasonably equivalent value" which is defined as follows: "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied." M.C.L.

§ 566.33. The only significant difference in terms of a constructive fraudulent transfer is that "good faith" is no longer an element for determining whether a conveyance was made without receiving a reasonably equivalent value, i.e. fair consideration. See Jeffrey L. LaBine, *Michigan's Adoption of the Uniform Fraudulent Transfer Act: An Examination of the Changes Effected to the State of Fraudulent Conveyance Law*, 45 Wayne L.Rev. 1479, 1500 (Fall 1999).

Having determined that Michigan case law interpreting the MFCA is still viable, the question become what Michigan case law says regarding a mortgage payment by an insolvent debtor on property held by a tenancy by the entireties. The Trustee is correct that there is a long line of Michigan cases which hold that such a payment constitutes is fraudulent as to creditors.

One of the earliest cases discussing fraudulent conveyances and property held as a tenancy by the entireties is *Newlove v. Callaghan*, 86 Mich. 297, 48 N.W. 1096 (1891). In Newlove, the debtor, together with his wife, paid $1,850.00 to purchase land as a tenancy by the entirety. A judgment creditor attempted to levy on the property. The Michigan Supreme Court held that the creditor was entitled to the husband's share in the property, stating:

It would be a gross injustice to permit debtors to apply moneys which should be applied to the payment of their debts to the creation of an estate which would be beyond the reach of their creditors. Had the entire estate been placed in the wife's name, there could have been no question but that the same would be regarded as fraudulent under the statute, and it is no less a fraud upon creditors because the title has been taken in the name of the defendants jointly. In other words, estates in entirety cannot be created at the expense of creditors, and held in fraud of the latter's right.

86 Mich. at 300–01, 48 N.W. 1096.

Later, in *Caswell v. Pilkinton*, 138 Mich. 138, 101 N.W. 212 (1904), the debtor and his wife owned a parcel of land as tenants by the entirety which was subject to a purchase-money mortgage. When the debtor's father died, the debtor used the inheritance to pay off the mortgage. The Michigan Supreme held that although Newlove concerned the creation of an entireties estate, and the instant case involved a payment on an existing entireties estate, the principle of *Newlove* still applied and ordered the case be submitted to a jury.

Several years later, the Michigan Supreme Court decided *McCaslin v. Schouten*, 294 Mich. 180, 292 N.W. 696 (1940), the case on which the Trustee primarily relies. In *McCaslin*, the debtor incurred liability in a stockholder's suit in June of 1937 against a bank for $10,066.50. At the time, the debtor owned property with his wife by tenancy by the entireties on which he had a $15,000.00 mortgage with Michigan Trust Company. In June and July of 1937, the debtor made three payments on the mortgage, reducing the debt to $5,400.00. The payments were made with funds belonging to the debtor's wife and funds the debtor obtained from the sale of securities. In October of 1937, the debtors obtained a second mortgage from Michigan Trust Company for $8,000.00, thereby satisfying the earlier mortgage and obtaining $2,600.00. The receiver of the bank to whom the debtor was adjudged liable sued the debtors and Michigan Trust Company seeking to set aside the payments on the first mortgage as fraudulent as to the bank. The debtor admitted to being insolvent at the time he made the payments on the mortgage. The Michigan Supreme

Court found that the payments were fraudulent under Michigan law, explaining:

Being insolvent at the time and indebted to the bank, in so far as Mr. Schouten [the debtor] invested or used his individual funds to pay the mortgaged debt on the entireties property and thereby placed or attempted to place his individual property beyond the reach of his creditors, the transaction constituted a fraud in law. Such payment cannot be held proper on the theory that Mr. Schouten was indebted to the mortgagee and had a right to pay that creditor in preference to others. Instead the payment on the mortgage debt was tantamount to an investment of Mr. Schouten's funds in property which he and his wife would hold as tenants by the entireties; and thus he would hinder and possibly prevent his creditors from reaching the funds invested by him. With a mere substitution of names the following applies to the instant case:

'But, * * * under the reasoning of the decision above quoted from, Alexander Wallace, while he was indebted to the plaintiff, had no right to tie up an additional sum * * * in an estate by the entireties and make no provision whatever for the payment of the few hundred dollars that he owed the bank, especially in view of the fact that by a simultaneous transaction he had disposed of all his personal property * * *.'

*First State Bank v. Wallace,* 201 Mich. 673, 167 N.W. 887, 889.

Regardless of intent, such investment or use of Mr. Schouten's individual funds was a fraud in law. *Newlove v. Callaghan,* 86 Mich. 297, 48 N.W. 1096, 24 Am.St.Rep. 123; *Michigan Beef & Provision Co. v. Coll,* 116 Mich. 261, 74 N.W. 475; *Foster v. Whelpley,* 123 Mich. 350, 82 N.W. 123; *Caswell v. Pilkinton,* 138 Mich. 138, 101 N.W. 212; *First State Bank v. Wallace, supra; Lemerise v. Robinson,* 241 Mich. 528, 217 N.W. 911; *Jaffe v. Ackerman,* 279 Mich. 304, 272 N.W. 685.

We cannot accede to the contention that since it resulted in paying pro tanto the mortgage obligation, Mr. Schouten's payment of $9,600 on the mortgage cannot be said to have been without 'a fair equivalent therefor'; and therefore under the statute (Comp.Laws 1929, §§ 13394, 13395; Stat.Ann. 26.883–4) the payment must be considered as one not 'fraudulent as to creditor.' What constitutes 'a fair equivalent' or 'a fair consideration' under the Fraudulent Conveyance Act must be determined from the standpoint of creditors. The debtor might be satisfied to give his assets to a stranger or to exchange them for some worthless chattel. But the law will not permit him to do so if he thereby renders himself uncollectible to the detriment of his creditors. In general the test would seem to be whether the 'conveyance' by the debtor, which 'includes every payment of money' (Comp.Laws 1929, § 13392; Stat.Ann. 26.881), renders the debtor execution proof. By his payment of $9,600 on the mortgage indebtedness, Mr. Schouten rendered himself to that extent less solvent, because prior thereto he had assets in his own right available to his creditors to the extent of $9,600, but after the payment on the mortgage covering property held by the entireties, not only was this amount of Schouten's assets placed beyond the reach of his creditors, but not even Schouten himself, without the consent of his wife, could apply this or an equivalent amount in satisfaction of his debts. The additional interest which Mr. Schouten received in the entireties property by paying $9,600 of his money on the mortgage debt was not as to his

creditors 'a fair equivalent' or a 'fair consideration' for the $9,600 of personal assets which he possessed prior thereto. In effect what Mr. Schouten did amounted to an investment of $9,600 of his personal assets in property to which he and his wife held title by the entireties. He was insolvent at the time and in law the transaction under the Uniform Fraudulent Conveyance Act was a fraud on his creditors.

*McCaslin,* 292 N.W. at 699.

The doctrine reflected in *McCaslin* was again applied in *Dunn v. Minnema,* 323 Mich. 687, 36 N.W.2d 182 (1949). In Dunn, the insolvent debtor made a payment on a land contract on property owned with his wife as tenants by the entireties with funds from the debtor-husband's solely held savings account and savings bonds. The court held for the creditor, stating:

In its undisputed, however, that at the time he [debtor] made the payments in question in this proceeding he was insolvent as a result of the judgment standing against him. The transaction must be considered with reference to the effect on the rights of the creditor. Notwithstanding the purposes for which the payments were made, they, in legal effect, constituted an investment in property ostensibly beyond the reach of creditors. Without reference to actual intent, the result was a constructive fraud against which relief may be granted.

323 Mich. at 692, 36 N.W.2d 182.

Likewise, in *Glazer v. Beer, supra,* the debtor borrowed money purportedly to remodel his barn which he held with his wife as tenants by the entirety. The debtor essentially admitted that he was insolvent at the time he was given the loans. After one of the individuals who loaned him money obtained a judgment against the debtor, the debtor filed for bankruptcy. The trus-

tee sought to obtain a lien on the property and establish the transaction as fraudulent as to creditors. The Michigan Supreme Court affirmed the trial court's granting of a lien on the property, stating that "[t]his court has consistently held that during insolvency entireties estates cannot be created or enhanced at the expense of creditors and that relief may be granted without reference to any actual fraud." 72 N.W.2d at 142. The Michigan Supreme Court also noted that it made no difference whether the funds used to enhance the entireties property came from the debtor himself or from a third party, stating that "it is the mere fact that funds which are available to creditors are put beyond their reach, which affords the basis for relief, without any particular reference to the origin of those funds." *Id.* at 143.

The Bankruptcy Court erred in distinguishing *Glazer.* *Glazer* reiterated that as long as there is creation or enhancement of entireties property while insolvent, this is sufficient to show constructive fraud. The actual form of the transfer does not matter. Although *Glazer* may differ factually, the long-standing principal of law applied in *Glazer* applies equally in this case.

*In re Greenfield, supra,* a case of more recent origin, the trustee brought an adversary proceeding to set aside an alleged fraudulent transfer. The debtor transferred a residence he owned in his own name to himself and his newly married wife as tenants by the entirety. The bankruptcy court, citing the portion of *Glazer* set forth above, set aside the transfer as a fraudulent conveyance. Again, the Bankruptcy Court erred in distinguishing *Greenfield;* any factual differences do not diminish the importance of the application of the legal rule regarding creation or enhancements to entireties property while insolvent.

Finally, in *In re Elkins,* 94 B.R. 932 (Bankr.W.D.Mich.1988), the trustee brought an adversary proceeding to avoid alleged fraudulent conveyances. On the eve of bankruptcy, the debtors sold commercial property they jointly owned. One debtor used its portion of the profits to invest in property held their wives with his wife as tenants by the entireties. The other debtor used the funds to pay down a mortgage on entireties property owned by the debtor and his wife. The Trustee moved to set aside the payments as fraudulent conveyances. The Bankruptcy Court surveyed Michigan law as outlined above and concluded that

> it is clear that the transfers in question here were made while the debtors were insolvent and had the effect of putting the proceeds of the commercial real estate beyond the reach of creditors. The transfers were therefore fraudulent under Michigan law .... it makes no difference what the debtors intended in making these transfers, or whether the payments were made on a mortgage or a land contract, nor upon an antecedent debt as opposed to a newly incurred debt.

94 B.R. at 935.

This line of cases is uncontroverted. As one commentator stated:

> Michigan cases, dispersed over half a century, consistently hold that it is fraudulent for one with other debts to continue after insolvency to make payments on a mortgage of entireties property or under a contract to purchase property by the entireties, and such property is liable for the insolvent's debt to the extent he has placed assets therein, notwithstanding the mortgage or contract may have been executed while solvent and before other debts were contracted.

R.F. Martin, *Use of Debtor's Individual Funds or Property for Acquisition, Improvement of, or Discharge of Liens on, Property Held in Estate by Entireties as a Fraud Upon Creditors,* 7 A.L.R.2d 1104 *7.

■ Thus, the Bankruptcy Court erred in its conclusion that there was no Michigan case law on point and in looking to case law from other jurisdictions. Michigan case law is clear—a payment by an insolvent debtor to enhance property held by the entireties or a payment used to create property held by the entireties is fraudulent as to creditors. Applying the doctrine to this case, the debtor's use of his settlement funds to pay off his mortgage debt on property held by the entireties at a time of insolvency was fraudulent as to creditors because it put those funds beyond the reach of creditors. In other words, it enhanced the value of the property at the expense of creditors.

Admittedly, case law from other jurisdictions holds that similar payments are not fraudulent. *See Shaia v. Meyer,* 244 F.3d 352 (7th Cir.2001) (holding that a prepayment of an existing secured mortgage obligation was not a fraudulent conveyance under Virginia's fraudulent conveyance statute). *See also In re Carrozzella & Richardson,* 302 B.R. 415 (Bankr.D.Conn.2003); *In re First Alliance Mortgage Co.,* 298 B.R. 652 (Bankr. C.D.Cal.2003). These cases reason that a payment to satisfy a mortgage debt is not a transfer for less than reasonably equivalent value. Regardless of these holdings, the Court must apply the applicable law of Michigan which has rejected such argument and provides that payments such as the one made by the debtor constitute a constructive fraud on creditors.

Given the undisputed circumstances of the debtor's payment—a payment made by

an insolvent debtor on property held by tenancies by the entireties—the Trustee not only stated a claim for constructive fraud under Michigan law, the Trustee was entitled to summary judgment on the claim. The Bankruptcy Court erred in concluding otherwise.

It is noted that the Bankruptcy Court appeared to also conclude that the Trustee's claim could not go forward because it has not established the requisite "badges of fraud." To the extent that the Bankruptcy Court so found, it erred because the "badges of fraud" apply only when considering a claim of actual fraud discussed below, not constructive fraud.

### C. Count I—Actual Fraud

#### 1. The Statute

M.C.L. § 566.34 deals with actual fraud provides in relevant part:

Sec. 4. (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor.

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor did either of the following:

(i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Subsection (2) sets forth the factors in determining "actual intent," which are referred to as the "badges of fraud" mentioned above:

(2) In determining actual intent under subsection (1)(a), consideration may be given, among other factors, to whether 1 or more of the following occurred:

(a) The transfer or obligation was to an insider.

(b) The debtor retained possession or control of the property transferred after the transfer.

(c) The transfer or obligation was disclosed or concealed.

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e) The transfer was of substantially all of the debtor's assets.

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

#### 2. The Bankruptcy Court's Decision

The Bankruptcy Court also found that the Trustee failed to state a claim for actual fraud. The Bankruptcy Court's reasoning is difficult to discern. This may due in part to the fact that the Bankruptcy

Court first addressed the Trustee's motion for summary judgment and concluded that it must be denied as to its claim for actual fraud because genuine fact issues remained with respect to the factors indicative of the badges of fraud. The Bankruptcy Court, however, then dismissed the Trustee's complaint entirely, purportedly on the grounds that the payment at issue here was not a fraudulent conveyance of any kind. As discussed above, this holding is contrary to Michigan law with respect to constructive fraud. It appears that the Bankruptcy Court applied its holding to the Trustee's claim of actual fraud and constructive fraud but did not delineate between the two discrete claims.

### 3. Parties Arguments

The Trustee argues that the Bankruptcy Court erred in considering dismissal of its claim for actual fraud in the first instance because Harlin did not seek to dismiss this count but instead focused on dismissing the constructive fraud count. The Trustee also argues that at a minimum, it stated a claim for actual fraud.

Harlin does not address the dismissal of this count, but instead argues that, as a matter of law, the badges of fraud factors point to a finding that there was no actual fraud.

### 4. Discussion

■ The Bankruptcy Court's treatment of this claim made review of its decision difficult. The Bankruptcy Court initially found that there were genuine issues of material fact as to whether the badges of fraud factors were satisfied, but later concluded that the Trustee failed to state a claim for actual fraud. However, the Bankruptcy Court failed to clearly articulate it reasons for dismissing this count for failure to state a claim. In light of this, coupled with the parties' arguments focus-

ing on the merits of the claim, i.e. whether the badges of fraud are present so as to establish actual fraud, lead to the conclusion that the Bankruptcy Court erred in dismissing the claim outright. The Trustee has stated a claim for actual fraud. Whether or not actual fraud has been established raises, as the Bankruptcy Court first declared, a genuine issue of material fact.

### V. Conclusion

For the reasons stated above, the decision of the Bankruptcy Court is REVERSED and REMANDED for proceedings consistent with this opinion. This includes entry of judgment for the Trustee on its claim of constructive fraud and reinstatement of the Trustee's claim of actual fraud.[3]

SO ORDERED.

---

3. It would appear that the equity in the home at the time of the payment would be exempt.